RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0422P (6th Cir.)
File Name: 01a0422p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

                v.                              No. 00-1337

ANTWAND DESHION
HAWKINS,
        *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 99-00141—Robert Holmes Bell, Chief District Judge.

Argued: September 12, 2001

Decided and Filed: December 14, 2001

Before: DAUGHTREY and GILMAN, Circuit Judges;
COHN, Senior District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Tonya L. Krause-Phelan, THE KRAUSE LAW
FIRM, P.C., Grand Rapids, Michigan, for Appellant.

_____

[*] The Honorable Avern Cohn, Senior United States District Judge for
the Eastern District of Michigan, sitting by designation.

1

Timothy P. VerHey, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Tonya L. Krause-Phelan, THE KRAUSE LAW FIRM, P.C., Grand Rapids, Michigan, for Appellant. Timothy P. VerHey, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

---

## OPINION

---

PER CURIAM.

### I.  Introduction

This is a criminal case.  Defendant-Appellant, Antwand DeShion Hawkins (Hawkins), appeals from his conviction and sentence entered under a plea agreement, specifically claiming that the district court erred in failing to require the Plaintiff-Appellee, the United States of America (the government), to move for a downward departure under U.S.S.G. § 5K1.1 based on Hawkins's substantial assistance. Because the law of this Circuit as set forth most recently in *United States v. Moore*, 225 F.3d 637 (6th Cir. 2000), provides that the government's refusal to file a motion for downward departure may only be reviewed for whether the government's refusal was based on unconstitutional motives, such as race.  Because Hawkins does not argue that the government's refusal was based on unconstitutional motives, but rather argues that the government's refusal violates his constitutional right to due process and equal protection and/or was not rationally related to any legitimate governmental purpose, the decision of the district court must be **AFFIRMED**.  However, because the panel believes that the law in this Circuit represents an unduly restrictive and incorrect interpretation of the United States Supreme Court's decision in *Wade v. United States*, 514 U.S. 181 (1992), the panel respectfully suggests that an *en banc* review of this decision would be appropriate.

## II.  Background

### A.  The Offense Conduct

On February 9, 1999, Jordell Steen (Steen), a juvenile armed with guns provided by David Davis (Davis), robbed two banks in Grand Rapids, Michigan.  On both occasions, Davis and Hawkins provided transportation for Steen to and from the banks.  In the first robbery, Hawkins drove Steen to the bank and Davis and Hawkins waited for Steen in separate cars after the robbery.  As Steen was running away from the bank with a bag containing approximately $2,000.00 in cash, a dye pack inside the bag exploded, at which point Steen threw the bag and gun in some nearby bushes.  Although the first robbery was unsuccessful, the three immediately planned a second robbery using the same procedure.  After the second robbery, which yielded $2,243.00, Hawkins drove Steen to Hawkins's apartment and Davis followed separately.  The three divided the proceeds equally.

### B.  After the Offense

#### 1.

On February 26, 1999, Hawkins was charged in a criminal complaint alleging that he participated in an armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (e).  An arrest warrant was issued that same day; Hawkins initially appeared on the warrant on August 24, 1999.[1]  Immediately thereafter, Hawkins assisted the government regarding the identity, location and involvement of Davis and Steen.  Specifically, Hawkins rode around with federal agents and successfully located and identified homes, addresses, and cars.

---

[1]The circumstances surrounding Hawkins's arrest are not clear from the record, but it does appear that Hawkins was in state custody at the time of his arrest; the docket sheet shows that a writ of habeas corpus ad prosequendum was issued for him to appear in federal court on the warrant.

On September 2, 1999, Hawkins was charged in an information with two counts of aiding and abetting in two armed bank robberies, in violation of 18 U.S.C. §§ 2 and 2133.

Meanwhile, Steen was arrested on May 11, 1999 in New York, where he eventually fled after the robberies. On May 21, 1999, a single-count information was filed charging Steen with committing an act of juvenile delinquency, in violation of 18 U.S.C. § 2113(a), for his involvement in the two robberies. Thereafter, at a date not clear from the record, Steen was deemed incompetent to stand trial and no further action was taken regarding him at that time.

Presumably with information provided by Hawkins, Davis was charged in a superceding indictment on September 16, 1999 with two counts of armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d) and 2, and two counts of using or carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c).[2]

On September 20, 1999, Hawkins pled guilty to both counts in the information under a plea agreement, which provides in relevant part:

> As part of his plea agreement with the United States, the defendant agrees to cooperate with federal and state authorities in their continuing investigation of conduct in the Western District of Michigan and elsewhere. For Purposes of this plea agreement, the defendant agrees that "cooperation" encompasses:  1) meeting with and providing truthful information to law enforcement authorities when requested to do so, 2) testifying truthfully at any grand jury and other court proceedings when requested to do so by law enforcement authorities, and 3) admitting to and performing satisfactorily on a

---

[2]Although not part of the record on appeal, the docket sheet for Davis's case shows that he was arrested on June 11, 1999 and indicted on June 28, 1999.

that the government has discretion to file a motion for downward departure does not give it the right to act arbitrarily or irrationally. That *Wade* permits a district court to review the government's refusal to file a motion for downward departure to determine whether such a refusal is not rationally related to any legitimate end serves only to insure that the government properly exercises its discretion.

## VI. Conclusion

Based on current Circuit precedent, the decision of the district court must be AFFIRMED. However, for the reasons stated above, the panel respectfully urges *en banc* review of this case. This case presents an opportunity to modify, or at least clarify, this Circuit's interpretation of *Wade* and the extent to which the district court may review the government's refusal to file a § 5K1.1 motion where the government retains discretion to file such a motion and where the government fully admits that the defendant has done everything expected of him.

the information never charged Hawkins with violating § 924(c).

We therefore conclude that the government's reasons for not filing a § 5K1.1 motion were not based on "its rational assessment of the cost and benefit that would flow from moving," but rather on its "failure to acknowledge or appreciate" Hawkins's assistance. *See Wade*, 504 U.S. at 186. In other words, we suggest that Hawkins has not simply shown that he offered substantial assistance, which alone is insufficient under *Wade* to warrant review, but has also shown that the government's reasons for not filing a downward departure motion were not rationally related to any legitimate government end. Indeed, while the panel appreciates the government's candor at oral argument in acknowledging that "[Hawkins] did everything within his power to help this case. He helped located Jordell Steen and Davis and put the case together," it only shows the egregiousness of the government's refusal to file a motion for downward departure in this case.

### F.  A Word About Discretion

In the event that the government argues that court review ought to be very limited when the government reserves the right to file a motion for downward departure in its sole discretion and/or that the reservation of discretion somehow implies the rationality of a decision not to file a motion for downward departure, the panel offers the following: Discretion has been defined as "[t]he faculty of deciding or determining in accordance with circumstances and what seems just, fair, right, equitable, and reasonable in those circumstances." David M. Walker, *The Oxford Companion to Law* 363 (1980). It has also been defined as "[a] public official's power or right to act in certain circumstances according to personal judgment and conscience in the discharge of its duties." *Black's Law Dictionary* 479 (7th ed. 1999). Discretion, therefore, does not connote an unfettered choice, but a reasoned choice – a choice that must not be exercised arbitrarily or irrationally. In other words, the fact

polygraph examination conducted by an examiner selected by the United States. The defendant understands that his failure to comply with this paragraph of the plea agreement will constitute a material breach of the agreement and will permit the United States to move the court to set aside this Plea Agreement.

In the event that defendant's cooperation rises to the level of "substantial assistance" as that term is used by USSG § 5K1.1 and/or Federal Rules of Criminal Procedure 35, the United States agrees to request a downward departure in the defendant's sentence. The parties agree that the determination of whether defendant's conduct rises to the level of "substantial assistance" will lie with the United States in its sole discretion. The parties also agree that the decision of how much of a downward departure to recommend, if any, will lie with the United States and its sole discretion.

As evidenced by the government's comments at Hawkins's sentencing set forth below, at the time Hawkins pled guilty the government anticipated that Hawkins would be the sole witness against Davis because Steen had been ruled incompetent to stand trial and another potential witness, Mahogany Austin (Austin), who allegedly had conversations with Davis and Steen, could not be located.

On September 24, 1999, Hawkins testified at Davis's trial. As it happened, the government was able to locate Austin, who also testified. In addition, Steen, who had previously been deemed incompetent and had not yet been prosecuted, was deemed competent on the eye of Davis's trial and also agreed to testify against Davis.[3] In the Assistant United States Attorney's (AUSA) final argument, discussed more fully below, the AUSA relied heavily on Hawkins's testimony to support the government's case against Davis. The jury convicted Davis on all charges and Davis was subsequently

---

[3] The record is not clear as to the circumstances surrounding Steen's apprehension and subsequent agreement to testify at Davis's trial.

sentenced to 44 years of imprisonment. Davis appealed his conviction and sentence to this court, where his appeal is pending.

On October 14, 1999, less than a month after Davis's trial, Steen, now deemed competent, pled guilty to the single-count in the information filed against him. On November 14, 1999, Steen was sentenced to a juvenile detention center until his 21st birthday, which amounted to 67 months incarceration.

Despite Hawkins's assistance both before and after Davis's trial, the government declined to file a motion for downward departure. On March 13, 2000, Hawkins filed a motion to compel the government to file a downward departure motion, arguing that he had fully performed everything expected of him under the plea agreement and the government's refusal to file a motion was not rationally related to any legitimate governmental purpose. The government filed a response, arguing that (1) because the government had discretion to file a motion for downward departure, it could not be compelled to file such a motion absent proof that its decision to refrain was based on unconstitutional considerations, which was not the case, and (2) Hawkins was not entitled to a reduction because "the plea did not require him to plead guilty to two gun offenses associated with the bank robberies under 18 U.S.C. § 924(c)."

The motion was heard at Hawkins's sentencing on March 17, 2000, where the district court asked the AUSA why such a motion was not made. The AUSA explained:

> At the time that we charged Mr. Hawkins and Ms. Krause-Phelan [Hawkins's attorney] was assigned to represent him, a number of things were at stake and had occurred. First of all, Mr. Hawkins had told the FBI everything that you see now in the Presentence Investigation Report about his conduct as it pertains to these bank robberies. So that means a number of things.
> We knew that he would be willing to tell us everything that happened, which was a benefit to us in trying to put a case together against Mr. Davis. But is also

under these circumstances. This is especially true when the AUSA referred to Hawkins's testimony at length during closing argument.[13] While the government referred to both Steen and Hawkins, the government placed special emphasis on Hawkins's credibility, stating that Davis "threatened to kill Hawkins and his girlfriend" if Hawkins testified against Davis. As for Mahogany Austin, the AUSA simply stated "the only thing she really knows that interests us at all in this case is that this person she knew as Twin [Steen] wanted to talk to two people Twan [Hawkins] and Cheeks [Davis]." Thus, the government's argument that a departure was not sought because Hawkins was not the only witness against Davis at trial is not credible. Of even greater significance, the fact that the government was able to locate Austin prior to trial and the fact that Steen was deemed competent on the eve of Davis's trial are circumstances beyond Hawkins's control and in no way diminish the undisputed fact that Hawkins fully performed his obligation under the plea agreement.

Moreover, the government's argument that Hawkins received a benefit in the form of not being charged with a violation of § 924(c), and therefore a § 5K1.1 motion was not warranted, is highly suspect, especially given the government's admission at sentencing that the decision not to change was primarily based on the fact that there was not any evidence that Hawkins violated § 924(c). Moreover, as evidenced in paragraph six of the plea agreement,[14] Hawkins was not charged with § 924(c) in exchange for his plea; not as a precondition for a downward departure motion. Moreover,

---

[13]A review of the government's closing argument reveals that the government referred to Steen and Hawkins's testimony seven times and Austin's testimony only once.

[14]Paragraph six reads in part: "[I]n the event that defendant 1) enters a guilty plea in accordance with this plea agreement, 2) that plea is accepted by the court, 3) the defendant is sentenced as a result of the plea, and 4) he serves that sentence, no additional charges will be brought against him."

any circumstances; the defendant rather requested the government file a motion based on his assistance independent of the plea agreement. Ultimately, the court in *Duncan* concluded that the government's reasons for not seeking a departure were rationally related to legitimate ends.

### 3.

In light of the Supreme Court's language in *Wade*, as well as the split among the Circuits as to the interpretation of *Wade* and the scope of the district court's ability to review the government's refusal to file a motion for a downward departure, we believe that this Circuit should re-examine its interpretation of *Wade*, as articulated most recently in *Moore*. At the very least, this Circuit's law on this issue requires a more thorough and consistent analysis.[12]

### E.  The Government's Refusal to File a Motion for Downward Departure was Irrational

Interestingly, the district court here did not rest its decision on *Wade*, but instead examined the government's reasons for not seeking a departure and also appeared to be troubled by its conclusion that it could not offer Hawkins any relief. In the event that this Circuit overrules existing precedent and determines that courts may review the government's decision for arbitrariness and/or lack of bad faith even where the government reserves discretion to file a § 5K1.1 motion, the panel respectfully suggests that the government's actions here were not rationally related to any legitimate end and/or were in bad faith and, as such, Hawkins should be entitled to a reduction based on his substantial assistance.

The government admitted both before the district court and at oral argument that Hawkins did absolutely everything required of him under the plea agreement. That the government by the time of trial was able to locate other witnesses, should not relieve it from filing a § 5K1.1 motion

---

[12]*See* n.9, *supra.*

demonstrated to Mr. Hawkins that he could have been charged with these gun offenses by his conduct. We made the decision not to charge him with the gun offenses because we needed him as a witness. And he didn't, frankly, touch the guns or provide the guns, and we felt that was a reason, a principled reason not to charge him.

But going into the case, we has three potential witnesses that we felt were crucial to putting the case together against Mr. Davis: Mr. Hawkins with whom we reached a plea agreement; Jordell Steen himself, the juvenile involved; and a woman by the name of Mahogany Austin, who lived in Cleveland and had had personal conversations with Mr. Davis once Mr. Steen was in Cleveland.

*At the time we reached our plea agreement with Mr. Hawkins, we had no idea whether we would be able to use the other two witnesses.* Judge Enslen had ruled that Jordell Steen was incompetent at that point because the only medical testimony on the record at that point was a finding that Mr. Steen was incompetent, and this lasted up until literally the day before trial in the *Davis* case, so I had no idea whether I had access to Mr. Steen as a witness. Mahogany Austin could not be found at that point. We didn't know we would be able to have her as a witness.

So at the point that I negotiated a plea with Mr. Hawkins, I was thinking if Mr. Hawkins is the only witness that we have and he testifies in the manner I think he will testify, then perhaps he should get an additional benefit over and above the 32-year benefit he got as part of his deal.[4] *As things unfolded, however, Jordell Steen was found to be competent, was a witness; Mahogany Austin was found, was a witness; and Mr.*

---

[4]The "32-year benefit" refers to the fact that the government did not charge Hawkins with a violation of 18 U.S.C. § 924(c), using or carrying a firearm during and in relation to a crime of violence of drug trafficking.

*Hawkins became one of three witnesses that were crucial to the government's case.*

So when I went to our Departures Committee following the resolution of the Davis case and explained how the trial unfolded

. . . .

I thought that once the question was put to me by anyone asking, If you've already given this man a 32-year break and you're telling me he's not the only witness that allowed me to convict Mr. Davis, should this person get an additional benefit? I had no good answer for that.

So as things unfolded, Your Honor, my answer would be that Mr. Hawkins did provide substantial assistance. But in terms of being substantial assistance in light of how the trial unfolded, I couldn't say that it was substantial assistance in the sense that but for Mr. Hawkins's testimony, we would have lost the case against Mr. Davis.

(Emphasis added).

When the district court asked the AUSA that if Hawkins was the only person to testify at Davis's trial, would the AUSA who prosecuted the case deem his assistance substantial to warrant filing a motion for downward departure, the AUSA answered in the affirmative. The AUSA also stated that the government was "completely satisfied with how he [Hawkins] testified at the trial." Indeed, at no time did the AUSA indicate that Hawkins did anything less than was expected of him under the plea agreement. Rather, the AUSA stated that because there were three witnesses against Davis instead of one, Hawkins did not render "substantial assistance," but "just assistance."

The district court noted the differences between paragraphs 4 and 5 of the plea agreement, with the former outlining and defining Hawkins's "cooperation" and the latter stating that if the "cooperation" rises to the level of "substantial assistance," then a downward departure motion would be made. The district court noted that it was troubled by the two

1029, 1031 (9th Cir. 1999) (same); *In re Sealed Case*, 181 F.3d 128, 142 (D.C. Cir. 1999) (same)).[11]

The Tenth Circuit went on to note that this Circuit and the Fifth and Eleventh Circuits have relied on *Wade* to limit the district court's authority to review the government's refusal to file a substantial assistance motion only for an unconstitutional motive, such as the defendant's race or religion. *See id.* (*citing United States v. Solis*, 169 F.3d 224, 226 (5th Cir.), *cert. denied*, 528 U.S. (1999) ("[A] district court may review the Government's refusal to move for a downward departure if the refusal is based on an unconstitutional motive."); *United States v. Bagnoli*, 7 F.3d 90, 92 (6th Cir. 1993) ("[In *Wade*,] the Supreme Court ruled that a district court has the authority to review the Government's failure to move for a downward departure only if the court finds that the refusal was based on an unconstitutional motive."); *United States v. Nealy*, 232 F.3d 825, 831 (11th Cir. 2000) ("In *Wade*, the Supreme Court limited the free exercise of [the government's power to file a substantial assistance motion] only to the extent that the government cannot exercise that power, or fail to exercise that power, for an unconstitutional motive.")).

The plea agreement in *Duncan* did not provide that the government would file a substantial assistance motion under

---

[11]The court in *Duncan* also noted that the Eighth Circuit originally utilized *Wade* to reach a position in accordance with the First, Second, Third, Fourth, Seventh, Ninth and Tenth Circuits, *see United States v. Romsey* 975 F.2d 556, 557 (8th Cir. 1992) (holding district courts may review a prosecutor's refusal to file a motion for substantial assistance and grant relief if the refusal is based on an unconstitutional motive such as race or religion, or is not rationally related to any legitimate government end). However, the Eighth Circuit recently appears to have altered the "rationally related to a legitimate government end" test to a "refusal was irrational" test, which prohibits the government from basing its decision whether to file a substantial assistance motion "on factors other than the substantial assistance provided by the defendant." *United States v. Anzalone*, 148 F.3d 940, 941 (8th Cir.), *vacated & reh'g en banc granted*, 148 F.3d 940 (8th Cir.), *reinstated & reh'g en banc denied*, 161 F.3d 1125 (8th Cir. 1998) (quotation marks omitted).

collected cases from all of the Circuits and summarized the conflicting state of the law on this issue, noting that the First, Second, Third, Fourth, Seventh, Ninth and D.C. Circuits have all held, post-*Wade*, that a district court's authority to review the government's refusal to file a substantial assistance motion is limited to determining whether the decision was: (1) motivated by an unconstitutional motive, *or* (2) not rationally related to a legitimate government end. *See Duncan*, 242 F.3d 940, 947, n. 11 (citing *United States v. Sandoval*, 204 F.3d 283, 286 (1st Cir. 2000) ("[W]hen a defendant has entered into a plea agreement that contains no express provision for consideration of a section 5K1.1 departure, the government's discretionary decision not to file a section 5K1.1 motion is, as in Wade, reviewable only for an unconstitutional motive or the lack of a rational relationship to any legitimate governmental objective."); *United States v. Brechner*, 99 F.3d 96, 99 (2d Cir. 1996) ("As the Supreme Court made clear in *Wade v. United States*, 504 U.S. 181, 185-86. (1992), even defendants who have no cooperation agreements are entitled to assurance that the government's motion is not withheld for some unconstitutional reason."); *United States v. Abuhouran*, 161 F.3d 206, 211-12 (3d Cir. 1998) (holding "'federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive,'" which occurs "when the government's decision is based on the defendant's race, religion or gender" or "when it's 'refusal to move was not rationally related to any legitimate Government end,'"*quoting Wade*, 504 U.S. at 185-86); *United States v. LeRose*, 219 F.3d 335, 342 (4th Cir. 2000) ("[C]ourts may review a prosecutor's refusal to file a motion for substantial assistance and grant relief if the refusal is based on an unconstitutional motive such as race or religion, or is not rationally related to a permissible government objective."); *United States v. Egan*, 966 F.2d 328, 332 (7th Cir. 1992) (same), *cert. denied*, 506 U.S. 1069, (1993); *United States v. Cruz-Guerrero*, 194 F.3d

paragraphs, and "put the government on notice" that it ought to provide criteria in the plea agreement as to what is "substantial assistance," "so that the government is held to a criteria, not just to a subjective intention." The district court ultimately denied the motion, noting that only the government could move for a downward departure and also made the statement that it could not find "that the government has abused its discretion in not concluding substantial assistance was given in this case." The district court sentenced Hawkins on both counts to concurrent terms of 150 months imprisonment.[5]

### III.  Issue on Appeal

Although Hawkins and the government frame the issue differently, the issue on appeal is the extent to which a district court can review the government's refusal to seek a downward departure under U.S.S.G. § 5K1.1.

### IV.  Standard of Review

The district court's interpretation the guidelines is reviewed *de novo*. *United States v. Jones*, 159 F.3d 969, 980 (6th Cir. 1998). A district court's factual findings underlying the application of the sentencing guidelines are reviewed for clear error. *United States v. Buchanan*, 213 F.3d 302, 312 (6th Cir. 2000).

---

[5]The Presentence Investigation Report recommended a sentencing range of 168-210 months, based on a total offense level of 30 and a criminal history category of VI. At sentencing, Hawkins objected to the Presentence Investigation Report's recommendation of a 2 point enhancement to his offense level under U.S.S.G. § 3B1.1(c) for being an organizer in the offense. The AUSA did not object to Hawkins's argument and stated he would not object to the district court's decision to not apply the enhancement. The district court agreed with Hawkins, thereby reducing Hawkins's total offense level to 28, which produced a sentencing range of 140 to 175 months; the district court also stated that it was sentencing Hawkins to the lower end of the range "due to his age [21 years at the time of sentencing] and due to his cooperation here that he has given and due to what this Court believed is a sense of contriteness on his part . . . ."

## V.  Analysis

### A.  Arguments

Hawkins argues that the government's refusal to seek a downward departure violates his constitutional rights to due process and equal protection.  Hawkins's due process argument is based on the contention that Hawkins did provide substantial assistance and its refusal to seek a departure was a breach of the plea agreement and/or evidence of bad faith.  Hawkins's equal protection argument is based on the contention that under *Wade v. United States*, 504 U.S. 181 (1992), he is entitled to relief if the government's actions in refusing to seek a departure are not rationally related to a legitimate government end.

The government argues that the district court correctly concluded that it could not compel the government to seek a departure in absence of a claim that the government's actions were based on an unconstitutional motive.

### B.  U.S.S.G. § 5K.1. and *Wade*, in Brief

### 1.

United States Sentencing Guidelines § 5K1.1 provides: "Upon a motion of the government stating that the defendant has provided substantial assistance in the investigation of another person who has committed an offense, the court may depart from the guidelines."  U.S.S.G. § 5K1.1  A district court generally lacks the authority to grant a downward departure pursuant to this section absent a motion by the government. *United States v. Shrewsberry*, 980 F.2d 1296, 1297 (9th Cir. 1992), *cert. denied*, 510 U.S. 839 (1993).  This section grants the government the discretion, but does not impose a duty to move for a departure when the defendant has rendered substantial assistance. *Wade v. United States*, 504 U.S. 181, 185 (1992).  Mere allegations that a defendant provided substantial assistance are insufficient to invoke court review. *See id.*

that the Committee may have offered for finding the defendant's assistance to be insubstantial.

Although in *Jones*, unlike this case, the defendant did not argue that the government acted in bad faith, the plea agreement in *Jones* was similar in that the government "retain[ed] its discretion concerning whether to file a [substantial assistance] motion." *Id*. at 691.

Thus, we believe that the law of this Circuit that a district court may only review the government's refusal to file a motion for downward departure to determine whether the government's refusal is based on an unconstitutional motive where the government retains discretion to file a § 5K1.1 motion, is an overly restrictive, and incorrect, interpretation of *Wade*. *Wade* did not make such a distinction; *Wade* did not even involve a plea agreement.

### 2.

That said, we are aware of a split of authority on this issue, with the Sixth Circuit being in the minority.  Most recently, in *United States v. Duncan*, 242 F.3d 940 (10th Cir.), *cert. denied*, (2001),[10] the Court of Appeals for the Tenth Circuit

---

[10] According to the Supreme Court's docket sheet, No. 00-10437, the government filed a waiver of right to respond on June 13, 2001.  The petition was distributed for conference on September 24, 2001, and denied on October 1, 2001.  The petition framed question presented for review as follows: "Whether the United States Court of Appeals, Tenth Circuit, applied the correct standard of review, contrary to this Court's opinion in Koon v. United States, of the District Court's findings of fact and downward departure for substantial assistance." *See* brief for Petitioner in *Duncan v. United States*, 00-10437 at ii.  A review of the petition reveals that the issue presented was whether the Tenth Circuit erred in finding that the government's reasons for not seeking a departure were rationally related to a legitimate government end or offered its own reasons for justifying the government's actions, particularly because the district court granted Duncan's motion for downward departure for substantial assistance.  Thus, the way in which the case was presented to the Supreme Court did not highlight the Circuit split on the impact and interpretation of *Wade*.

Government's concession that nonperformance of its contingent obligation in plea agreement is reviewable for bad faith).  Thus, while the plea agreement did not guarantee Jones a section 5K1.1 motion, we believe it did guarantee fair dealing.  In addition to explicitly obliging the prosecutor to present the Departure Committee with accurate information as to the nature and extent of Jones's cooperation, the agreement implicitly required the Committee to consider that evidence and, if it believed the assistance to be "substantial," to so find. In other words, Jones was entitled to an honest and fully informed evaluation by the Committee.  *See Rexach*, 896 F.2d at 713 ("where the explicit terms of a cooperation agreement leave the acceptance of the defendant's performance to the judgment of the prosecutor, the prosecutor may reject the defendant's performance provided he or she is honestly dissatisfied").

58 F.3d at 692.

The court in *Jones* recognized the difficult, if not impossible, task of proving the government's bad faith, and added the following direction to the United States Attorney's Office:

Jones does not allege that the Government acted in bad faith.  Because a defendant is not privy to the deliberations and actions of the U.S. Attorney's Office, however, a defendant will face enormous difficulty in supporting such a charge. To ameliorate this problem and to provide both the trial judge and a reviewing court with information that might help them weigh an allegation of bad faith, we suggest that prosecutors who enter into agreements like the one before us, but subsequently fail to file a section 5K1.1 motion, summarize for the district court what information they provided the Departure Committee, while at the same time safeguarding information that could compromise an ongoing investigation or endanger the defendant or others, together with any explanation, similarly circumscribed,

In *Wade*, *supra*, the Supreme Court held, *inter alia*, that "federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive.  Thus, a defendant would be entitled to relief if a prosecutor refused to file a substantial-assistance motion, say, because of the defendant's race or religion." 504 U.S. at 185-86.

### C.  Sixth Circuit Precedent

In *United States v. Bagnoli*, 7 F.3d 90 (6th Cir. 1993), a panel of this court relied on the above language in *Wade* to find that defendant was not entitled to a hearing on the government's refusal to file a motion for downward departure, stating: "A defendant has right to a hearing only if he makes a substantial threshold showing of an unconstitutional motive." *Id*. at 92.  Because the defendant in *Bagnoli* did not make such a showing, the panel held that defendant was not entitled to a hearing.

In *United States v. Benjamin*, 138 F.3d 1069, 1073 (6th Cir. 1998), another panel of this court relied on the quoted language in *Wade* to state that where, as here, the government has reserved its discretion to move for a departure,[6] "the district court may only review the government's refusal to make the motion to determine whether the refusal is based on unconstitutional considerations, such as the defendant's race." 138 F.3d at 1073  The panel decision does not offer further discussion of *Wade*.

[6]While Hawkins argues that the government had bargained away its discretion, the following plain language of the plea agreement says otherwise, as the district court correctly noted: "The parties agree that the determination of whether defendant's conduct rises to the level of "substantial assistance" will lie with the United States in its sole discretion. The parties also agree that the decision of how much of a downward departure to recommend, if any, will lie with the United States and its sole discretion."

We note, however, that the decision in *Benjamin* did not rest on the above statement, because the panel found that the government had not reserved its discretion to make a motion for a downward departure in the plea agreement at issue. In such a circumstance, the government is obligated to move for a downward departure unless the defendant breaches the agreement. 138 F.3d at 1074 (citing *Wade* at 185-86). In *Benjamin*, the panel found that the government had not met its burden of proving that defendant breached the plea agreement, and accordingly vacated and remanded the defendant's sentence and directed the government to file a motion for downward departure. Thus, we conclude that the panel's statement in *Benjamin* regarding the interpretation of *Wade* was dicta.

However, in *United States v. Moore*, 225 F3d 637, 641 (6th Cir. 2000), another panel, relying on *Benjamin*, stated:

> While some circuits have ruled that courts may conduct a bad faith review of the government's refusal to file a substantial assistance motion, *see United States v. Knights*, 968 F.2d 1483, 1487 (2d Cir. 1992); *United States v. Jones*, 58 F.3d 688 (D.C. Cir. 1995), this Circuit has expressly ruled that when a plea agreement allocates complete discretion to the government to consider whether a substantial assistance motion should be filed, we may only review the government's decision for unconstitutional motives. *See United States v. Benjamin*, 138 F.3d 1069, 1073 (6th Cir. 1998) (holding that with respect to plea agreements where the government reserves discretion to file a substantial assistance motion, "a district court may only review the government's refusal to make the motion to determine whether the refusal is based on unconstitutional considerations, such as the defendant's race"); *see United States v. Austin*, No. 97-4197, 2000 WL 32017, at *5 (6th Cir. Jan. 4, 2000) (unpublished opinion) ("If the government reserves the discretion to determine whether the motion is warranted, the court is limited to reviewing simply whether the

Moreover, *Wade* did not involve a plea agreement -- a factor the Supreme Court itself recognized could be significant when it noted that Wade had not argued that the condition requiring the filing of a § 5K1.1 motion "is superseded in this case by any agreement on the government's behalf to file a substantial assistance motion." *Wade*, 504 U.S. at 185 (*citing Santobello v. New York*, 404 U.S. 257, 262-63 (1971), *United States v. Conner*, 930 F.2d 1073, 1075-77 (4th Cir.), *cert. denied*, 502 U.S. 958 (1991)).

Indeed, as noted by the panel in *Moore*, other Circuits have held, post-*Wade*, that the government still has an obligation to exercise its discretion in "good faith." *See United States v. Imtiaz*, 81 F.3d 262, (2d Cir. 1996); *United States v. Jones*, 58 F.3d 688 (D.C. Cir.), *cert. denied*, (1995). As the Court of Appeals for the District of Columbia explained in *Jones*:

> [T]he Government's contention at oral argument that, under the terms of its agreement with Jones, its decision not to file a departure motion can only be reviewed for constitutional infirmities proves too much. Even in the absence of any contractual arrangement, the Government's decision not to file a section 5K1.1 motion, like any other prosecutorial decision, is subject to constitutional limitations. *Wade*, 504 U.S. at 183- 84, 112 S.Ct. at 1843-44. The plea agreement, however, provides additional protection for Jones. Like all contracts, it includes an implied obligation of good faith and fair dealing. Restatement (Second) of Contracts § 205 (1981); *see also Sparks*, 20 F.3d at 479 (noting

---

*unconstitutional motive or bad faith precipitated the government's determination.* In *Johnson*, the district court conducted an evidentiary hearing to determine whether the government acted in bad faith or based on unconstitutional motives in refusing to file a motion for downward departure. The *Johnson* panel affirmed the decision of the district court and, in so doing, reviewed the government's proffered reasons for refusing to file a motion for downward departure for bad faith or unconstitutional motive. Indeed, the opinion in *Johnson* appears to conflict with *Moore* inasmuch as it contemplates bad faith review of the government's decision.

where the government has acted for reasons not rationally related to any legitimate governmental interest. We agree. The Court of Appeals for the Ninth Circuit, among others discussed *infra.*, relying on *Wade*, has concluded the same. *See United States v. Murphy*, 65 F.3d 758, 762 (9th Cir. 1995) (stating "the government cannot refuse to file such a motion on the basis of an unconstitutional motive (e.g. racial discrimination), or arbitrarily (i.e for reasons not rationally related to any legitimate governmental interest. . . . If the government has so refused, the district court has authority to depart downward.) (citations omitted); *United States v. Mikalelian*, 168 F.3d 380, 384 (9th Cir. 1999) (same).

We believe the Ninth Circuit's interpretation of *Wade* is sound. The Supreme Court in *Wade* acknowledged, in the face of the government's concession, that the courts can also determine whether the government acted arbitrarily in refusing to seek a downward departure in addition to reviewing whether a refusal was based on an unconstitutional motive.[9]

_____

[9]We note that notwithstanding what we believe to be the current state of the law in this Circuit, there is some support for this interpretation of *Wade* in language in prior panel opinions. In *Sullivan v. United States*, 11 F.3d 573, 575 (6th Cir. 1993) the panel relied on *United States v. Bagnoli*, *supra*, to deny defendant relief because he failed to "identify any unconstitutional infirmity" for the government's refusal to file a motion for downward departure and also stated: "The government's stated reasons for refusing to motion the district court for a downward departure, i.e. defendants's information did not amount to 'substantial assistance,' *was a rational and acceptable reason for the government to refuse to request a downward departure.*" In *United States v. Williams*, 53 F.3d 769, 733 (6th Cir. 1995), the panel relied on *Bagnoli* and *Sullivan* to deny relief based on no evidence that the government's refusal was based on unconstitutional motives, but also added, citing *Wade*, that the "*defendant has failed to show that the government's 'refusal to move was not rationally related to any legitimate Government end.'*" Most recently, in *United States v. Johnson*, No. 98-6134, 2000 WL 125862, at **3 (6th Cir. Jan. 25, 2000) (unpublished) the panel cited *Benjamin* as a basis for denying the defendant relief, but also stated, relying on *Wade*, that: "[w]here, however, sole discretion whether to make such a motion is reserved to the prosecution, a district court's oversight of the decision is limited to situations in which defendants can demonstrate that *an*

government's refusal to make the motion is based on unconstitutional considerations.").[7]

The panel's decision in *Moore* can be interpreted two ways: it either reiterated the rule established in *Benjamin* that a district court may only review the government's refusal to file a motion for downward departure for unconstitutional motive, or as we believe, created this rule based on the dicta in *Benjamin*. In any event, although we believe the statement in *Benjamin* was dicta, the panel in *Moore* went on to apply this statement to hold that because the defendant's plea agreement afforded the government "complete discretion" to determine whether to file a motion for downward departure, the panel "may review the government's refusal only for unconstitutional motives." 225 F.3d at 641. Because the defendant did not allege that the government's refusal was based on any impermissible motive, the panel affirmed the district court's denial of his motion to compel to the government to file a motion for downward departure.

Here, because Hawkins admits he is not arguing that the government acted with unconstitutional motives, this case is virtually indistinguishable from *Moore*. This means that the district court's inquiry ends and no court is able to review the government's refusal to file a motion for downward departure. Because it is well-established that one panel of the Sixth Circuit cannot overrule the decision of another panel, *United States v. Ables*, 167 F.3d 1021, 1027 (6th Cir. 1999); *Salmi v. Secretary of Health & Human Servs.*, 774 F.2d 685,

_____

[7]In addition to the unpublished panel decision in *Austin*, *supra*, several other panels have relied on *Benjamin's* interpretation of *Wade* to bar review of the government's refusal to file a motion for downward departure absent a showing that the refusal was based on unconstitutional considerations. *See United States v. Lucas*, No. 99-3147, 2001 WL 302044 (6th Cir. Mar. 22, 2001) (unpublished); *United States v. Perkins*, No. 99-3659, 2000 WL 1872045 (6th Cir. Dec. 15, 2000) (unpublished); *United States v. Race*, No. 97-3555, 1999 WL 503573 (6th Cir. July 9, 1999) (unpublished); *United States v. Ysaguirre*, No. 99-3351, 1999 WL 1206860 (6th Cir. Dec. 9, 1999) (unpublished); *United States v. Dean*, No. 98-3236, 1998 WL 702350 (6th Cir. Sept. 24, 1998) (unpublished).

689 (6th Cir. 1985) ("The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision."), we must affirm the district court's denial of Hawkins's motion to compel the government to file a motion for downward departure.

## D.  The Reason For *En Banc* Review

### 1.

However, because the panel believes that this Circuit's interpretation of *Wade* is erroneous, or at the very least overly restrictive, the panel writes to express its view as to why *en banc* review is warranted in this case.

Although the Supreme Court in *Wade* did hold that a defendant must show unconstitutional motive in order to obtain review of the government's refusal to file a downward departure motion, the Supreme Court went on to say the following:

As the Government concedes, see Brief for United States 26 (citing *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2515-2516, 49 L.Ed.2d 511 (1976) (per curiam )),[8]  *Wade would be entitled to relief if the*

---

[8]The cited portion of the government's brief reads:
    This Court has never held that "arbitrariness" is a basis on which to challenge an exercise of prosecutorial discretion.  To be sure, the Court has said that a prosecutor's exercise of discretion "may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification" *Wayte v. United States*, 470 U.S. at 608, *quoting Bordernkircher v. Hayes*, 434 U.S. at 364, *quoting in turn, Oyler v. Boles*, 368 U.S. at 456.  To the extent that the Court intended its reference to "other arbitrary classifications" to extend beyond constitutionally suspect classifications such as race and religion, the reference can apply only to the highly unlikely case in which the prosecutor classifies defendants according to factors that are not rationally related to whether they rendered substantial

*prosecutor's refusal to move was not rationally related to any legitimate Government end*, cf.*Chapman v. United States*, 500 U.S. 453, 464-465, 111 S.Ct. 1919, 1927-1928, 114 L.Ed.2d (1991), but his argument is still of no avail.  This is so because the record shows no support for his claim of frustration in trying to plead an adequate claim, and because his claim as presented to the District Court failed to rise to the level warranting judicial enquiry.  The District Court expressly invited Wade's lawyer to state for the record what evidence he would introduce to support his position if the court were to conduct a hearing on the issue.  App. 10. In response, his counsel merely explained the extent of Wade's assistance to the Government.  *Ibid*.  This, of course, was not enough, for although a showing of assistance is a necessary condition for relief, it is not a sufficient one. The Government's decision not to move may have been based not on a failure to acknowledge or appreciate Wade's help, but simply on its rational assessment of the cost and benefit that would flow from moving.  *Cf. United States v. Doe*, 290 U.S.App.D.C. 65, 70, 934 F.2d 353, 358, *cert. denied*, 502 U.S. 896, 112 S.Ct. 268, 116 L.Ed.2d 221 (1991); *United States v. La Guardia*, 902 F.2d 1010, 1016 (CA1 1990).

504 U.S. at 186-87 (emphasis added).

Hawkins relies on the above language in *Wade* to argue that even absent an unconstitutional motive, a court can review the government's refusal to move for a downward departure

---

assistance.  *See New Orleans v. Dukes*, 427 U.S. 297, 303 (1976).  Absent evidence of such an irrational classification, however, a defendant's allegation that he provided useful assistance to the government is not sufficient to warrant judicial review of the prosecutor's decision not to move for a downward departure.  If constitutionally cognizable "arbitrariness" were understood to mean simply the treatment of one defendant differently from others similarly situated, virtually any claim of "error" in the government's refusal to file a substantial assistance motion would be subject to judicial review.