**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0269n.06
Filed: May 16, 2008

**No. 06-5785**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DAVID SHROPSHIRE | ) | |
| | ) | |
| Defendant-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| V. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| | ) | TENNESSEE AT CHATTANOOGA |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: **COLE and GRIFFIN, Circuit Judges; FORESTER, Senior District Judge.**[*]

**KARL S. FORESTER, Senior District Judge.** This is an appeal from the district court's ruling granting the government's motion to withdraw its motion filed pursuant to Federal Rule of Criminal Procedure 35(b). For the reasons set forth below, we AFFIRM the decision of the district court.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Defendant-appellant David Shropshire ("Shropshire") and co-defendant Kendrick Bugg ("Bugg") were indicted on June 11, 2002, in a five-count indictment in connection with the

---

[*]      The Honorable Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

robbery of a gas station. Shropshire entered into a plea agreement with the government on September 18, 2002, wherein he pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(e), and to a § 1951 Hobbs Act violation in exchange for dismissal of the other counts. The plea agreement contained the following relevant provision:

> 12. At the time of sentencing, the United States will bring to the Court's attention the nature, extent, and value of the defendant's forthrightness. This information will be provided to the Court so that it may be considered in determining a fair and appropriate sentence under the facts of the case. If, in the opinion of the United States, the defendant renders substantial assistance within the meaning of U.S.C.G.§ 5K1.1 and 18 U.S.C. § 3553(e), the United States will file a motion pursuant to one or both of these provisions. The defendant acknowledges that, under the law and under the terms of this plea agreement, the United States retains complete discretion in determining whether a departure motion will be filed, and, if such motion is filed, whether it is filed pursuant to U.S.C.G. § 5K1.1, 18 U.S.C. § 3553(3), or both. The defendant acknowledges that the decision as to whether to file any such motion is not reviewable by the Court except under the limited circumstances set forth in the opinion of Wade v. United States, 504 U.S. 181 (1992). The defendant further acknowledges that, should the United States file such a motion, the extent of departure, if any, is within the sentencing judge's discretion.

(J.A. at 19-20.)

Bugg proceeded to trial and was convicted of a Hobbs Act violation and various firearms violations. Shropshire had provided information to authorities regarding Bugg, but because he had initially lied to federal authorities, the government determined that he would not be a credible witness and, therefore, he did not testify at Bugg's trial.

According to Shropshire, in 2002 and early 2003, he provided information to a Detective Charles Dudley ("Det. Dudley") of the Chattanooga Police Department regarding an unsolved

2

murder case.[1] Shropshire asserts that in January of 2003, two individuals whom he had identified were arrested in connection with the murder.

Thereafter, on January 27, 2003, Shropshire was determined to be an Armed Career Criminal and was sentenced to concurrent terms of 211 months. At the time of sentencing, the government did not file any motion pursuant to § 5K1.1 of the United States Sentencing Guidelines or 18 U.S.C. § 3553(e). According to Shropshire, the government did not make any mention of the assistance Shropshire had provided to Det. Dudley;[2] neither, apparently, did Shropshire or his counsel. Shropshire did not have any objections to and did not directly appeal either his conviction or his sentence.

On May 5, 2003, counsel for Shropshire sent a letter to Assistant U.S. Attorney Tammy Combs stating that, as he had "indicated . . . previously," Shropshire had provided information about a homicide to Det. Dudley. Counsel also provided the suspect's name, the victim's name, and Det. Dudley's contact information. The letter asked AUSA Combs to confirm Shropshire's assistance and advise counsel whether it rose to the level of substantial assistance. AUSA Steven Neff apparently took over for AUSA Combs in 2003 and Shropshire's counsel sent a letter to AUSA Neff in December of 2003 asking for an update on the status of the government's determination as to whether to file a Rule 35(b) motion in Shropshire's case based on the

---

[1] Specifically, Shropshire alleges that he provided the name of the victim, what she was wearing when she was murdered, where the body was buried, the fact that anti-freeze had been poured on the body in an effort to prevent detection, the name of the person who advised the murderer to pour anti-freeze on the body, and that one of the persons involved had taken something in an attempt to help him pass a lie detector test.

[2] A copy of the transcript of judgment proceedings was made at the district court level, but only a limited portion of that transcript is part of the record on appeal.

assistance he had provided to Det. Dudley.

On January 25, 2004, the government filed a motion pursuant to Federal Rule of Criminal Procedure 35(b). Therein, the government stated that it was unknown at that time whether the information provided by Shropshire would result in substantial assistance, but that the motion was being filed in order to protect the defendant's ability to receive a downward departure in the event the assistance was determined to be substantial (i.e., a "saving" motion).[3] Thus, the government asked the district court to hold the Rule 35(b) motion in abeyance.

On March 12, 2004, another attorney who had worked with Shropshire, a Mr. Jeffrey Schaarschmidt, sent a letter to Shropshire outlining and confirming the assistance that Shropshire had allegedly provided to Det. Dudley. According to that letter, the assistance was provided "as early as May 24, 2003 and later . . ." but the letter also states that Shropshire had a face-to-face interview with Det. Dudley on or about January 21, 2003, approximately one week prior to Shropshire's sentencing hearing. Mr. Schaarschmidt sent a similar letter to Shropshire in May of 2006.

On October 27, 2005, the district court ordered the government to act on its Rule 35(b) motion. On December 8, 2005, Shropshire filed a *pro se* motion requesting that the district court appoint counsel and proceed on the Rule 35(b) motion. The district court appointed counsel for Shropshire and set the matter for an in-chambers, off-the-record conference for April 10, 2006. Following the conference, the defendant filed a sealed memorandum regarding the cooperation

---

[3]     Rule 35 requires that a motion for a reduction in sentence based on substantial assistance be filed by the government within one year of sentencing. Fed. R. Cr. P. 35(b)(1). The government may file a motion after the one-year deadline, but a court's power to grant a later-filed motion is limited to specific situations not at issue herein. *See id.* 35(b)(2)(A)-(C).

4

he had allegedly provided. On April 11, 2006, the government filed a status report advising the district court that it was investigating Shropshire's allegation of assistance to Det. Dudley, but that Det. Dudley had retired and was hospitalized and unable to verify Shropshire's claim, as he was in a coma. The government asked for more time to resolve the question.

On May 10, 2006, the government moved to withdraw its Rule 35(b) motion, noting that it was unable to verify Shropshire's alleged assistance with either Det. Dudley or his colleagues in Chattanooga. A lieutenant who had reviewed the file said there was no indication that Shropshire had provided any information leading to the conviction of the defendant in that case. The government also pointed out that Shropshire had provided false information in the present case and, thus, was unable to assist the government in the trial of his co-defendant, Bugg. Having no basis upon which to ask for a reduction of Shropshire's sentence based on substantial assistance, the government asked to withdraw its Rule 35(b) motion.

Finding that the government had made a "diligent investigation" of defendant's allegation of substantial assistance, the district court granted the government's motion to withdraw. The court also denied Shropshire's motion for a hearing on the issue of his alleged cooperation, finding that he had failed to meet his burden of making a threshold showing of an unconstitutional motive in the government's decision whether to file a Rule 35(b) motion. The district court also rejected Shropshire's claim that the plea agreement required the government to file a Rule 35(b) motion.

This timely appeal followed. On March 2, 2007, this court *sua sponte* appointed counsel for Shropshire pursuant to the Criminal Justice Act.

## II.    JURISDICTION

The district court had jurisdiction over this case pursuant to 18 U.S.C. § 3231. This court has jurisdiction over Shropshire's appeal pursuant to 28 U.S.C. § 1291.

## III.  DISCUSSION

### A.    **Alleged Breach of the Plea Agreement**

This court reviews plea agreements as if they were contracts and employs traditional principles of contract law. *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002). A district court's determination of whether the government's conduct violated a plea agreement is a question of law reviewed *de novo*. *United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000). Shropshire contends that the government breached the plea agreement by failing to investigate his assistance in any meaningful or timely way. He argues that because the government, as of the time of sentencing, had failed to analyze whether Shropshire's assistance had been substantial, it had left that question unanswered and had not satisfied its obligations under the plea agreement. In other words, the plea agreement in the least required the government to answer the question of substantial assistance, even if the answer was in the negative.

Shropshire is correct that the plea agreement required the government, "*[a]t the time of sentencing . . .* [to] bring to the Court's attention the nature, extent, and value of the defendant's forthrightness." A review of the record indicates that, assuming the government was aware of Shropshire's conversation with Det. Dudley,[4] the government did not bring this information to

_____

    [4]    The record does not clearly indicate *when* the government first became aware of the assistance Shropshire allegedly provided to Det. Dudley. A letter from Mr. Schaarschmidt indicates that Shropshire may have met with Det. Dudley the week before he was sentenced by the district court, but does not indicate whether the government was aware of the meeting as of the time of sentencing. A letter from Shropshire's counsel to AUSA Combs written four months after the sentencing discusses Shropshire's meeting with Det. Dudley and indicates that counsel and Combs had previously discussed it, but does not specify *when* the government first learned of

the district court's attention. However, to the extent that this was a breach of the plea agreement or an error in sentencing, this was a breach or error that occurred *at sentencing*. Once it became clear at the sentencing hearing that the government was not going to present this information to the district court, it would have been reasonable for the defendant or his counsel to object. He did not, however. The obligation of the government to present this information was only "at the time of sentencing" and thus any obligation (again, assuming the government was aware of the alleged assistance) was breached before the defendant in open court. Thus, this was an objection that Shropshire was required to raise *at sentencing*, which he did not do. He also did not file a direct appeal alleging this error at sentencing. Shropshire's failure to object to the government's silence at sentencing constitutes waiver in this case.

We reject Shropshire's argument that the government's breach of the plea agreement became clear only when the government moved to withdraw its Rule 35(b) motion. According to Shropshire, up until then, he had reason to believe that the government was going to comply with the plea agreement based on the government's Rule 35(b) saving motion. However, the government was obligated to bring to the district court's attention the nature, extent, and value of the defendant's forthrightness only "at the time of sentencing" and, thus, any failure to do so constituted a breach only "at the time of sentencing."

If a party fails to object to an error at sentencing, the court may review the error only if it constitutes "plain error" that affects the substantial rights of a party. Fed. R. Cr. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-36 (1993); *United States v. McBride*, 362 F.3d 360, 373 (6th

---

the alleged assistance. Therefore, there is no evidence in the record as it stands to indicate that the government was even aware of Shropshire's meeting with Det. Dudley as of the time of his sentencing.

7

Cir. 2004). Even if the error affects substantial rights, this court may still decline to address the error, as Criminal Rule 52(b) is permissive, not mandatory. *Olano*, 507 U.S. at 735-36; *United States v. Clay*, 346 F.3d 173, 178 (6th Cir. 2003). Only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings should the court consider it necessary to address the error. *Olano*, 507 U.S. at 735- 36; *United States v. Jones*, 108 F.3d 668, 672-73 (6th Cir. 1997) (en banc).

Accordingly, under the plain error doctrine, we should: 1) consider whether unwaived error occurred in the district court; 2) consider whether the error was plain, that is, clear and obvious under current law; 3) consider whether the plain error affected substantial rights; and 4) if the first three factors exist, consider whether to exercise the court's discretionary power under Rule 52(b), and decide whether the plain error affecting substantial rights also seriously affected the fairness, integrity, or public reputation of judicial proceedings. *See Johnson v. United States*, 520 U.S. 461, 466-67 (1997); *United States v. Butler*, 297 F.3d 505, 517 (6th Cir. 2002); *see also United States v. Martin*, 438 F.3d 621, 628 (6th Cir. 2006); *United States v. Hamm*, 400 F.3d 336, 339 (6th Cir. 2005). "Where the government's breach of a plea agreement results in a defendant receiving a higher sentence than he otherwise would have had the government not breached the agreement, the error affects the defendant's substantial rights and seriously affects the fairness, integrity, or public reputation of the proceedings." *Hemphill*, 221 Fed. Appx. at 437 (citing *United States v. Swanberg*, 370 F.3d 622, 628-29 (6th Cir. 2004)). "Thus, plain error review in this case collapses into an inquiry of whether the Government plainly breached the plea agreement." *Id.*

As noted above, the government's obligation at the time of sentencing was to bring to the

court's attention the nature, value, and extent of Shropshire's forthrightness, and to evaluate Shropshire's cooperation and assistance and determine whether Shropshire had provided substantial assistance up to that point. All of the evidence in the record indicates that the government fulfilled these obligations. As to the conversation with Det. Dudley, there is no allegation or evidence in the record that the government was aware of this as of the time of sentencing. As for the assistance that Shropshire had provided with respect to co-defendant Bugg, the government outlined this assistance, but ultimately determined, as it was entitled to do, that it was not substantial. Therefore, unlike in the cases cited by Shropshire, the government had not failed to make the requisite determination of whether Shropshire had provided substantial assistance – it simply answered that question in the negative. Thus, it cannot be said that the government plainly breached the plea agreement at the time of the sentencing.

Shropshire's reliance on *United States v. Lukse*, 286 F.3d 906 (6th Cir. 2002), is misplaced. Although the plea agreement in *Lukse* appears similar to the one here, that case was decided on the defendant's direct appeal of the sentencing, not in the context of withdrawal of a Rule 35(b) motion, as here. There was no waiver and, thus, no plain error review. Further, unlike in *Lukse*, where the court found that the government had failed to act within the parameters of the plea agreement and thus required it to file a motion for downward departure, there was no such finding here by the district court and none is warranted on appeal.[5]

Likewise, *United States v. Hemphill*, 221 Fed. Appx. 435 (6th Cir. Apr. 10, 2007), and

---

[5] Shropshire, in his brief, reemphasizes that the government was not aware, as of the time of his sentencing, that he had provided assistance to Det. Dudley when he notes that the government was "made aware of that assistance as early as May 5, 2003." There is no allegation, much less proof, that the government was aware of this assistance at Shropshire's sentencing on January 27, 2003.

9

*United States v. Villareal*, 491 F.3d 605 (6th Cir. 2007), are of no help to Shropshire in this argument. As in *Lukse, Hemphill* also involved a direct appeal alleging breach of the plea agreement. In that case, unlike here, the plea agreement at issue expressly contemplated the filing of a Rule 35(b) motion. There was no question that, as of the time of sentencing, the government was aware of the assistance that had been provided by the defendant, but the government had not ever verified the information. In *Villareal*, a case also on direct appeal, the government had essentially admitted that it had not made a decision as of the time of sentencing. In contrast, at the time of Shropshire's sentencing, the government had evaluated Shropshire's known assistance and had determined that it did not rise to the level of substantial assistance.

**B.        Withdrawal of the Rule 35(b) Motion**

The second issue before the court is whether the district court erred in allowing the government to withdraw its Rule 35(b) motion. The government had filed a "saving motion," but ultimately was unable to verify the extent of Shropshire's assistance to Det. Dudley and, therefore, later moved to withdraw the motion, which the district court granted.

This court reviews for abuse of discretion a district court's decision to grant or deny a Rule 35(b) motion. *Small v. United States*, 100 Fed. Appx. 504, 506 (6th Cir. 2004). Regarding plea agreements such as the one in this case that provide the government "complete discretion" to file a motion for downward departure, this court limits its review to unconstitutional motives. *United States v. Moore*, 225 F.3d 637, 641 (6th Cir. 2000). This court does not review for bad faith when the decision to file a motion vests within the sole discretion of the government. *United States v. Hawkins*, 274 F.3d 420, 428 (6th Cir. 2001).

Shropshire does not allege any unconstitutional motives in the present case. Therefore,

the district court cannot be said to have abused its discretion in permitting the government to withdraw its motion.

Shropshire further argues that the government breached the plea agreement by failing to investigate in a timely manner Shropshire's alleged assistance to Det. Dudley in connection with the filing of the Rule 35(b) motion. As noted above, the government's plea agreement obligations were limited to making a determination, in its sole discretion, whether Shropshire had provided substantial assistance *as of the time of sentencing*. The government was not in any way obligated by the plea agreement to file a Rule 35(b) motion.[6] Rather, it was filed as a saving motion in the event Shropshire was determined, in the future, to have provided substantial assistance. Shropshire is attempting to assert an alleged error at sentencing by way of a ruling on a Rule 35(b) post-judgment motion. There is simply no authority for this and it is not permitted under current law.

## IV.    CONCLUSION

In sum, Shropshire was entitled to a governmental decision at the time of sentencing on the matter of his substantial assistance, which he received. Accordingly, the government did not breach the plea agreement and the district court did not err in granting the government's motion to withdraw its Rule 35(b) motion. The decision of the district court is AFFIRMED.

---

[6]    The plea agreement only states that the government must consider the filing of a motion pursuant to U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553(e). There is no allusion in the plea agreement to Rule 35(b).