**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William BENJAMIN (96–4040), Robert N.**
**Thompson (96–4064), Defendants–**
**Appellants.**

**Nos. 96–4040, 96–4064.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 1, 1997.

Decided March 12, 1998.

Joseph R. Wilson, Asst. U.S. Attorney (argued and briefed), Office of U.S. Atty., Western Division, Toledo, OH, for United States of America.

Sam A. Eidy (argued and briefed), Toledo, OH, for William Benjamin.

Paul L. Geller (argued and briefed), Scalzo, Cherry, Geudtner & Geller, Toledo, OH, for Robert N. Thompson.

Before: NORRIS, SUHRHEINRICH, and CUDAHY,* Circuit Judges.

CUDAHY, Circuit Judge.

Robert Thompson and William Benjamin pleaded guilty to a single count of conspiracy to distribute, and possess with intent to distribute, cocaine and crack in violation of 21 U.S.C. § 846. On appeal they challenge their sentences. Thompson asserts that the district court erred in determining his base offense level; Benjamin argues that the district court should have both compelled the government to make a substantial assistance motion and reduced Benjamin's sentence to reflect that he had accepted responsibility for his crime. With respect to Thompson, the district court considered relevant conduct in calculating the base offense level, and therefore we affirm the sentence. But we vacate Benjamin's sentence because, although he is not entitled to a reduction for acceptance of responsibility, he was improperly denied the benefit of a substantial assistance motion.

I. Robert Thompson

In exchange for Thompson's plea, the government dismissed several substantive charges against him, including possession of crack with intent to distribute within 1000 feet of a school, in violation of 21 U.S.C. §§ 841(a)(1) and 860. The plea agreement stipulated that Thompson had conspired to possess with intent to distribute between 35 and 50 grams of crack, an offense with a base level of 30. The agreement further contemplated that if the district judge granted Thompson a three-level reduction because he had accepted responsibility for his crime, *see*

* The Honorable Richard D. Cudahy, Circuit Judge of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

U.S.S.G. § 3E1.1, his offense level would be 27, with a sentencing range of 70 to 87 months. The plea agreement did not suggest that Thompson's sentence might reflect that some of his activities occurred within 1000 feet of a school. However, it did expressly state that the district judge would determine the facts and calculations relevant to Thompson's sentence, and that the judge was not bound by the stipulations in the plea agreement. At Thompson's sentencing hearing, the judge reiterated that he would decide the ultimate sentence. Thompson indicated that he understood this.

Contrary to what was contemplated by the plea agreement, the district judge calculated a base offense level of 31, not 30. The Presentence Investigation Report (PSI) had recommended a base level of 31, because Thompson possessed and intended to distribute between 35 and 50 grams of crack within 1000 feet of a school. See U.S.S.G. §§ 2D1.2(a)(2), 2D1.1(a)(3) and (c)(5). After the judge granted a three-level reduction for acceptance of responsibility, Thompson had an offense level of 28, with a sentencing range of 87 to 108 months. The judge sentenced him to 87 months.

On appeal, Thompson argues that the sentencing judge erred in pegging his base offense level at 31. Thompson asserts that he did not plead to, or intend to plead to, any offense that took place within 1000 feet of a school. But under the Sentencing Guidelines, the judge is not limited to the crime of conviction when calculating a base offense level. The Guidelines provide that the judge may consider all relevant conduct—i.e. "all acts and omissions committed, aided [or] abetted ... by the defendant ... that occurred during the commission of the offense of conviction...." U.S.S.G. § 1B1.3(a)(1); see United States v. McDowell, 902 F.2d 451, 453–54 (6th Cir.1990). This includes conduct that was the subject of charges that were dismissed in exchange for a guilty plea. See United States v. Blanco, 888 F.2d 907, 909 (1st Cir.1989) (Breyer, J.);

see also United States v. Sailes, 872 F.2d 735, 738 (6th Cir.1989). And the sale of crack within 1000 feet of a school undoubtedly is relevant to a conviction for conspiracy to possess with intent to distribute cocaine or crack.[1] See McDowell, 902 F.2d at 454.

When a sentencing court includes relevant conduct in its calculation of the base offense level, the conduct must be supported by a preponderance of the evidence. See United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991). We review the district judge's factual findings at sentencing for clear error. Id. Here we find no such error. The PSI reported three incidents of Thompson selling crack within 1000 feet of a school. At sentencing, when Thompson objected to the base offense level of 31, the judge asked whether Thompson was objecting because he had in fact not sold crack near a school. Thompson did not take this opportunity to challenge the accuracy of the PSI. Instead, he stressed that he had not intended to plead guilty to conduct that occurred close to a school. In light of Thompson's failure to assert that the PSI was inaccurate, the district judge did not clearly err when he decided to rely on the report. And as we have already explained, under § 1B1.3(a)(1), Thompson's proximity to a school was relevant conduct that could be considered in calculating his base offense level.

Finally, we note that a base offense level of 31 did not prejudice Thompson. The plea agreement contemplated that he would be in prison between 70 and 87 months. After the judge granted a reduction under § 3E1.1 for acceptance of responsibility, Thompson was exposed to a sentence between 87 and 107 months. The district court gave Thompson the minimum sentence—87 months. Although this is at the margin of what Thompson may have anticipated, it nonetheless falls within the range contemplated in the plea agreement. For these reasons, we AFFIRM Thompson's sentence.

---

1. At the plea hearing, the prosecutor recounted what the government would have to prove if this matter proceeded to trial. In so doing, he did not say that the government would have to show that Thompson possessed crack near a school. Thompson's appellate brief emphasizes the pros-ecutor's statement, but the statement is irrelevant to our analysis. The prosecutor stated only the proof that was necessary for the crime to which Thompson pleaded guilty. The prosecutor was not commenting on what conduct might be *relevant* to Thompson's crime.

## II. William Benjamin

The government made several promises in exchange for Benjamin's compliance with the terms of his plea agreement and his cooperation in the investigation of the conspiracy. One such promise was that "the government will ... move for a four-level reduction for substantial assistance as defined by [U.S.S.G.] § 5K1.1." But the plea agreement provided that if Benjamin committed any crimes while he was cooperating with the government, or otherwise violated the agreement, the government would not be bound by its representation.

At sentencing, the government refused to make a § 5K1.1 motion because it believed that Benjamin had been involved in a homicide. The government presented the testimony of Greg Roberts, a police officer for the City of Lima, Ohio. Officer Roberts explained that in mid-April 1996, three individuals shot a man named Robert Pickering. Benjamin had been released on bond prior to his sentencing, and his name surfaced in connection with the shooting. Officer Roberts spoke with Arthur Knuckles and Eric Watson, two of Benjamin's co-conspirators in the drug case. Knuckles reported that he heard Benjamin say that he had "shot up" Pickering. Watkins recounted that Benjamin said he had a Luger and had shot into Pickering's car. Approximately two days after the shooting, the district judge issued an unrelated arrest warrant because Benjamin had violated the terms of his pre-sentencing release. When Benjamin was arrested on that warrant, detectives spoke to him about the homicide. He invoked his Fifth Amendment right and declined to cooperate. No firearm was ever recovered.

Prior to his sentencing, Benjamin made a statement about his alleged involvement in the homicide:

> And as far as the rumor that has been going around about the homicide issue, by the time I [was in jail], the guys that were down there had pretty much heard their own version of the story. So, therefore, I feel on that issue, they heard threats from the streets and put it together with how they wanted it to happen.

Transcript of 9/6/96 at 37. As of the date of Benjamin's sentencing hearing, detectives were still investigating the homicide but had been unable to locate key witnesses.

■ The district court found that the government had probable cause to believe that Benjamin had breached the plea agreement by committing a crime.[2] As a result of this showing, the court did not require the government to make the § 5K1.1 motion that it had promised in the plea agreement. But, as we will elaborate, before the government could decline to make the substantial assistance motion, it had to prove Benjamin's breach by a preponderance of the evidence. Failing this, the promises of the plea agreement remained in effect.

■ First we review the law governing substantial assistance motions. Under § 5K1.1 of the Sentencing Guidelines, a defendant may receive a sentencing reduction if he substantially assists the government in its prosecution or investigation of other individuals. *See* U.S.S.G. § 5K1.1, app. n. 2. A district court may depart under § 5K1.1 only upon a motion from the government. *See Wade v. United States,* 504 U.S. 181, 185, 112 S.Ct. 1840, 1843–44, 118 L.Ed.2d 524 (1992). In many plea agreements, the government refers to the possibility of a § 5K1.1 motion but ultimately reserves discretion to determine whether the motion is appropriate. *See United States v. Watson,* 988 F.2d 544, 552 n. 3 (5th Cir.1993). With respect to these agreements, a district court may only review the government's refusal to make the motion to determine whether the refusal is based on unconstitutional considerations, such as the defendant's race. *See Wade,* 504 U.S. at 185–86, 112 S.Ct. at 1843–44. However, in order to induce a defendant to enter a plea agreement, the government may bargain

---

**2.** In making this determination, the district court properly did not consider Benjamin's reliance on his Fifth Amendment right against self-incrimination. *See United States v. Barrett,* 890 F.2d 855, 866 (6th Cir.1989) ("[W]e agree that 'a sentencing judge may not penalize the exercise of a defendant's privilege against self-incrimination by enhancing his sentence based upon the defendant's failure to cooperate by implicating other persons or otherwise admitting guilt to crimes with which he is not charged.' ") (quoting *United States v. Safirstein,* 827 F.2d 1380, 1388 (9th Cir.1987)).

away its discretion and simply promise to make the substantial assistance motion. *See Watson*, 988 F.2d at 553. The government then is obligated to make the motion unless the defendant breaches the agreement. The district court has the authority to determine whether a breach has occurred. *See id.*

■■■ The plea agreement between the government and Benjamin did not reserve the government's discretion to make the motion for a downward departure. Instead, it unequivocally stated that "if the defendant fully complies with all his obligations, as defined and described in this Plea Agreement, the government *will*, at the time of sentencing, move for a four-level reduction for substantial assistance." Plea Agreement at ¶ 19 (emphasis added). The use of "will" indicates that the parties did not intend that the government retain its discretion. *See United States v. Hernandez*, 17 F.3d 78, 82 (5th Cir.1994) ("The record sheds no light on the degree of discretion, if any, the parties intended for the government to retain by the use of the permissive word 'may' (as opposed to the mandatory 'will' or 'shall')."). Accordingly, the government was obligated to make the § 5K1.1 motion unless Benjamin breached the plea agreement.

■■■ Benjamin's appellate brief assumes that we will review for plain error the district court's decision that the government was not required to make the § 5K1.1 motion. This invocation of the plain error standard implies that the issue was not preserved for appeal. *See United States v. Reliford*, 58 F.3d 247, 250 (6th Cir.1995); *United States v. Moss*, 9 F.3d 543, 555 (6th Cir.1993) (Batchelder, J., concurring). And it is true that Benjamin never formally objected to the government's refusal to make a § 5K1.1 motion. However, he did request that the court make a record of the factors animating its acceptance of the government's refusal. Transcript of 9/6/98 at 5. After the district judge heard Officer Roberts' testimony and Benjamin's statement, he announced,

> I want the record to be clear on this ... I don't think that the evidence ... rises to the level of proof by a preponderance of

the evidence. So I may be erring in relieving the Government of its obligation to make a substantial assistance motion. Once, again I want to be clear for purposes of the record so that both sides can argue that issue if it comes to the attention of the Court of Appeals.

*Id.* at 38. As a general matter, we require contemporaneous objections—and enforce this rule by recourse to the plain error standard—to ensure that the district court has an opportunity to correct its mistakes. Here, however, the district judge was cognizant of the potential error. In light of the judge's commendably candid comment, we are afraid that it might be unnecessarily draconian to review the judge's decision only for plain error. But we need not resolve this issue because we must vacate Benjamin's sentence under any standard of review. The district judge erred when he allowed the government to decline to make the § 5K1.1 motion because it had "probable cause" to believe that Benjamin breached the plea agreement.

■■■ Before the government may decline to fulfill its obligations under a plea agreement, it must establish the defendant's breach by a preponderance of the evidence. *See, e.g., United States v. Crowell*, 997 F.2d 146, 148 (6th Cir.1993); *United States v. Tilley*, 964 F.2d 66, 71 (1st Cir.1992); *United States v. Verrusio*, 803 F.2d 885, 894 (7th Cir.1986). However, as we have already explained, here the district court found that, while the government had "at least probable cause" to believe that Benjamin breached the plea agreement, the level of proof did not rise to a preponderance of the evidence.[3] Transcript of 9/6/96 at 22–23, 38. Because the government failed to meet its evidentiary burden, it was not free to decline to make the substantial assistance motion.

■■■ Accordingly, we must vacate the sentence and remand to provide Benjamin with the benefit of the motion the government promised in the plea agreement. Of course, whether and to what extent to grant the motion is within the sound discretion of the district judge. *See* U.S.S.G. § 5K1.1

---

**3.** The government does not assert that the district court erred when it found that Benjamin's involvement in the homicide had not been prov-

en by a preponderance of the evidence. Therefore we need not review the district court's factual findings for clear error.

("Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court *may* depart from the guidelines.") (emphasis added); *United States v. Clase–Espinal,* 115 F.3d 1054, 1060 (1st Cir.1997); *United States v. Wills,* 35 F.3d 1192, 1196 (7th Cir.1994); *United States v. Johnson,* 33 F.3d 8, 9–10 (5th Cir.1994). On remand, then, the district judge is free to determine whether downward departure is warranted.

 Benjamin has an additional complaint about his sentencing, but it need not detain us. Benjamin contends that the district court erred when it refused to reduce his offense level on the basis that he had accepted responsibility for his crime. *See* U.S.S.G. § 3E1.1. Benjamin has the burden of proving, by a preponderance of the evidence, that such a reduction is appropriate. *See United States v. Williams,* 940 F.2d 176, 181 (6th Cir.1991). Insofar as acceptance of responsibility is a question of fact, we affirm the district court unless its decision is clearly erroneous. *See United States v. Morrison,* 983 F.2d 730, 732 (6th Cir.1993).

Benjamin is not entitled to a reduction under § 3E1.1 just because he pleaded guilty. *United States v. Christoph,* 904 F.2d 1036, 1040 (6th Cir.1990). And we find no error in the district judge's determination that Benjamin has not accepted responsibility for his part in the drug conspiracy. The record reveals that one of the conditions of Benjamin's pre-sentencing release was that he maintain contact with the Pretrial Services Office. Within eight days of his release he lost contact with that office, which then had to petition the district judge for an arrest warrant. The district court also credited hearsay testimony that Benjamin possessed a firearm while out on bond—a second violation of the conditions of his pre-sentencing release. We cannot find clear error in the district court's conclusion that this sort of behavior "doesn't square with acceptance of responsibility."[4] Transcript of 9/6/96 at 9.

Notwithstanding the fact that we affirm the district court's findings with respect to the § 3E1.1 reduction, we must VACATE Benjamin's sentence so that he may receive the advantage of the government's substantial assistance motion. Accordingly, Benjamin's case is REMANDED for proceedings consistent with this opinion.

---

**4.** The district judge expressly stated that he was not refusing to grant a reduction pursuant to § 3E1.1 because of Benjamin's alleged involvement in the homicide. Transcript of 9/6/96 at 25–26. Thus we do not inquire whether the alleged homicide was related to the drug conspiracy and thereby relevant to the judge's § 3E1.1 inquiry. *See Morrison,* 983 F.2d at 735.