NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0462n.06
Filed: June 29, 2007

No. 05-5714

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| SIRRICO DARNELL SNIPES, | ) | STATES DISTRICT COURT FOR THE |
| a/k/a Michael Snipes, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

**Before: CLAY, GILMAN, and McKEAGUE, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge**. Sirrico Darnell Snipes pled guilty to a charge

of conspiring to distribute more than 50 grams of crack cocaine and 500 grams or more of powder

cocaine. His plea agreement stated that the government would file a motion for the court to depart

below the mandatory-minimum sentence if the government was satisfied, in its sole discretion, that

Snipes had provided substantial assistance. Six months after entering his guilty plea, Snipes filed

a motion to seeking to withdraw it. The district court denied Snipes's motion and, in the absence

of a departure motion from the government, sentenced him to the mandatory-minimum sentence of

life imprisonment. On appeal, Snipes contends that the government breached its agreement, that he

should have been permitted to withdraw his plea, and that his sentence was otherwise

constitutionally flawed.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

A grand jury indicted Snipes in September of 2003 on one count of conspiring to distribute, and of conspiring to possess with the intent to distribute, 50 grams or more of a substance containing cocaine base (crack) and 500 grams or more of powder cocaine.  Three months later, in December of 2003, the government filed an information providing notice, pursuant to 21 U.S.C. § 851(a)(1), that Snipes faced an enhanced sentence if convicted due to two prior state felony-drug convictions in 1997 and 1999.

On January 26, 2004, Snipes pled guilty to the conspiracy charge.  He signed both a plea agreement and an Agreed Factual Basis (AFB) for the charge.  Snipes admitted in the AFB that his involvement in the conspiracy included the distribution of at least 50 grams of crack cocaine and at least 2 kilograms of powder cocaine.  The AFB also detailed Snipes's two prior state felony-drug convictions.  According to an affidavit submitted by Jeffery Whitt, Snipes's attorney at the time, the AFB's recitation of the drug quantities was revised twice before Snipes would agree to it.  Dan Smith, the Assistant U.S. Attorney (AUSA) who prosecuted Snipes's case, was out of town during these negotiations.  Whitt therefore negotiated the terms of Snipes's AFB with Agent Rainer Drolshagen of the Federal Bureau of Investigation.  In his affidavit, Whitt asserted that Smith had expressed disappointment with the AFB changes upon his return from vacation, despite his office's approval of them.

Based on the combination of the drug amounts to which Snipes admitted and his prior convictions, he faced a mandatory-minimum sentence of life imprisonment under 21 U.S.C. § 841(b)(1)(A). Snipes's plea agreement explicitly spelled out this mandatory-minimum sentence to which he was subject. It also explained, however, that the government would file a motion pursuant to 18 U.S.C. § 3553(e) seeking a downward departure from the mandatory life sentence if Snipes provided the government with substantial assistance. The decision of whether to file the motion was left to the government's "sole discretion."

Nearly six months after signing the agreement, Snipes replaced Whitt with Herbert S. Moncier, a private attorney in Knoxville. On July 15, 2004, Moncier proceeded to file the first of two motions seeking to withdraw Snipes's guilty plea. The initial motion set forth two grounds for withdrawal: (1) the changes in the law that arose from the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004), and (2) Snipes's concern that the information he could provide to the government would "in all probability" be insufficient to warrant a § 3553(e) departure. The district court denied Snipes's motion on both grounds. It first determined that the changes in the sentencing law had no bearing on the mandatory-minimum sentence that Snipes faced by virtue of his prior convictions. Regarding Snipes's second contention, the court observed that the government still hoped to call Snipes as a witness in the upcoming criminal trial of Terry and Marshane Woods, two of Snipes's coconspirators.

Snipes filed a second motion to withdraw in late September of 2004. He asserted that (1) he had begun to regret entering his plea almost immediately, but that intervening events had prevented him from contacting counsel, (2) the district judge who accepted his plea had a conflict of interest,

(3) the drug amounts in the AFB were erroneous, and (4) the sentencing law had changed, again citing *Blakely*. Snipes's conflict-of-interest claim stemmed from District Judge Ronnie Greer's representation, before joining the bench, of a criminal defendant named James Hunt. According to Snipes, Hunt would have been the government's "main witness" had Snipes's case proceeded to trial, and the government intended to call Hunt at the Woods' trial as well. In response to Snipes's motion, Judge Greer recused himself from the case.

The case was then transferred to District Judge Leon Jordan, who held a hearing on Snipes's pending second motion to withdraw. Judge Jordan issued an opinion in April of 2005, denying both the motion and Snipes's accompanying request for an evidentiary hearing. Ultimately, the government did not subpoena Snipes to testify at the Woods' trial and therefore did not file a § 3553(e) motion for a downward departure. The government explains this decision by noting that, after filing his motion to withdraw his plea, Snipes "refused to be interviewed" and instead asserted that he had withdrawn from his agreement. Snipes's counsel similarly failed to respond to the government's request to interview Snipes. The government was therefore unable to call Snipes to testify at the Woods' trial. Judge Jordan subsequently sentenced Snipes to a mandatory-minimum term of life imprisonment in April of 2005.

Snipes timely filed the present appeal, challenging both his conviction and his sentence. He asserts that (1) the government breached the plea agreement, (2) he should be permitted to withdraw his plea, (3) his mandatory-minimum sentence violates his Fifth Amendment rights, and (4) his sentence fails to take into account the 18 U.S.C. § 3553(a) sentencing factors.

## II. ANALYSIS

### A.    Standard of review

We review de novo the question of whether the government breached the plea agreement. *United States v. Swanberg*, 370 F.3d 622, 627 (6th Cir. 2004). In contrast, the denial by the district court of a defendant's motion to withdraw a plea will be overturned only if the court abused its discretion. *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007). We also review a district court's denial of a request for an evidentiary hearing under the abuse-of-discretion standard. *United States v. Triplett*, 828 F.2d 1195, 1199 (6th Cir. 1987). Finally, constitutional challenges raised by criminal defendants for the first time on appeal are evaluated against the plain-error standard of review. *United States v. Barton*, 455 F.3d 649, 652 (6th Cir.), *cert. denied*, 127 S. Ct. 748 (2006).

### B.    The government did not breach the plea agreement

Snipes's plea agreement provided that the decision to file a § 3553(e) downward-departure motion lay in the government's "sole discretion." This key fact—that Snipes's agreement explicitly provided the government with discretion—distinguishes his case from *United States v. Benjamin*, 138 F.3d 1069, 1074 (6th Cir. 1998), upon which Snipes mistakenly relies. The court in *Benjamin* held that where an agreement does not provide discretion, the government must justify its failure to file a § 3553(e) motion by showing that the defendant breached the agreement. *Id*. In contrast, "when a plea agreement allocates complete discretion to the government to consider whether a substantial assistance motion should be filed," this court reviews the government's decision "only for unconstitutional motives." *United States v. Moore*, 225 F.3d 637, 641 (6th Cir. 2000). Examples of unconstitutional motives include the failure to a file a substantial-assistance motion based on the

defendant's race or religion. *Wade v. United States*, 504 U.S. 181, 186 (1992) (citing race and religion as examples of unconstitutional motives for not filing a departure motion, but concluding that the defendant had not alleged such motives in that case).

Recognizing this formidable barrier, Snipes contends that the government's unconstitutional motive for failing to comply with the agreement was "punishing Snipes . . . [for] not saying what the prosecutor wanted said." He cites no authority, however, for the proposition that this amounts to an unconstitutional motive. Indeed, obtaining truthful, relevant testimony is a constitutionally valid reason that the government enters such agreements in the first place. The government expected Snipes to testify concerning his knowledge of the drug conspiracy at the trials of Terry and Marshane Woods. Ultimately, though, the government never benefitted from Snipes's testimony, truthful or otherwise, because Snipes filed his first motion to withdraw his guilty plea and to challenge the drug amounts contained in the AFB prior to the beginning of the Woods' trial. This failure to cooperate alone justified the government's decision not to file a departure motion.

Snipes nonetheless asserts that he attempted to withdraw from the agreement because he and his attorney sensed early on that the government might have wanted him to testify to certain facts, such as drug amounts, with which he disagreed. In particular, Whitt's affidavit explained that he advised Snipes that AUSA Smith's displeasure with the changes to Snipes's AFB "may cause problems with any downward departure . . . in the future." Snipes also theorizes that Smith would have preferred that Snipes's testimony match up more closely with that of Hunt, who the government also hoped would testify at the Woods' trial.

This argument fails for at least three reasons. First, if the facts that the government wanted Snipes to testify to were truthful and within his knowledge, his failure to so testify clearly justifies the government's withholding of a departure motion. Second, to the extent Snipes suggests that the government wanted him to testify falsely, he provides nothing beyond his own subjective fear of this prospect to support his claim. Snipes ultimately provides no valid basis upon which to conclude that the government intended to suborn his perjury at the Woods' trial in order to obtain convictions that it was able to secure, as it turns out, without his assistance. Snipes makes much of the fact that Smith, who prosecuted Snipes, allegedly expressed disappointment over the edits to Snipes's AFB that his office had approved. The district court properly determined, however, that this alleged sentiment of disapproval in no way lessened Snipes's ability to comply with the terms of his plea agreement and cooperate with the government.

Finally, as noted above, Snipes does not contend that the government explicitly demanded that he testify to facts beyond those contained in his AFB or otherwise within his knowledge. Snipes instead concedes that he short-circuited the process of preparing to testify at the Woods' trial by seeking to withdraw his plea before the trial even began. Moreover, even after Snipes refused to cooperate, the government contacted him to see if he still wanted to testify at the Woods' trial. Snipes declined, and his attorney did not respond to the government's request to interview Snipes. Because Snipes cannot show that the government had unconstitutional motives for failing to file a motion for a downward departure, we conclude that the government did not breach the plea agreement. Similarly, we conclude that the district court did not abuse its discretion in failing to hold an evidentiary hearing, since Snipes has alleged no facts sufficient to support his claim.

**C.      Snipes's motion to withdraw his plea**

Rule 11(d) of the Federal Rules of Criminal Procedure allows a defendant to withdraw a guilty plea after the court accepts it, but prior to sentencing, only if "the defendant can show a fair and just reason." In determining whether Snipes had made such a showing, this court has identified various factors as relevant, including:

> (1) whether the movant asserted a defense or whether he has consistently maintained his innocence; (2) the length of time between the entry of the plea and the motion to withdraw; (3) why the grounds for withdrawal were not presented to the court at an earlier time; (4) the circumstances underlying the entry of the plea of guilty, the nature and the background of a defendant and whether he has admitted his guilt; and (5) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Valdez*, 362 F.3d 903, 912 (6th Cir. 2004). The district court's opinion dated April 7, 2005 carefully and thoroughly analyzed all of these factors as well as Snipes's specific arguments for permitting withdrawal in this case before ultimately denying his motion. A detailed explanation by us covering the same ground would therefore be unduly duplicative. We conclude that the district court did not abuse its discretion in denying Snipes's motion to withdraw his guilty plea for the reasons set forth in that court's well-reasoned opinion.

We note in passing that Snipes's assertions that he and his mother intended for one of his attorneys to file a withdrawal motion sooner than 171 days after the plea was initially entered might, if true, help establish an ineffective-assistance-of-counsel claim. Snipes has not raised such a claim in this appeal, however, so that issue is not before us. Moreover, an ineffective-assistance claim would be more appropriately pursued through a 28 U.S.C. § 2255 motion. *See, e.g.*, *United States*

*v. Winkle*, 477 F.3d 407, 421 (6th Cir. 2007) (explaining this court's reluctance to address ineffective-assistance-of-counsel claims on direct appeal).

**D.     Other claims**

Snipes also raises three constitutional arguments for the first time on appeal. He first contends that the district court's application of the 21 U.S.C. § 841(b)(1)(A) mandatory life sentence violated his Fifth Amendment rights. This argument is misguided because Snipes signed an AFB admitting the drug quantities at issue and attesting to his prior drug convictions. No constitutional violation therefore arises from the court's reliance on those admitted facts at sentencing. *See United States v. Cook*, 453 F.3d 775, 777 (6th Cir. 2006) (noting that a court "may not rely on facts other than those rendered in the verdict *or which the defendant has specifically admitted* to impose a mandatory enhancement" (emphasis added)). Moreover, the facts of Snipes's prior convictions are specifically exempted from *Blakely*'s general rule that facts increasing a defendant's maximum penalty must be admitted by a defendant or found by a jury. *See United States v. Alford*, 436 F.3d 677, 680 (6th Cir.) (reaffirming that "any fact (*other than a prior conviction*) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt" (brackets omitted)), *cert. denied*, 127 S. Ct. 325 (2006).

Snipes's second argument is that his indictment was defective for failing to mention his prior convictions. But the government properly filed an information giving notice of its intent to seek a life sentence based on Snipes's prior convictions, a procedure set forth in 21 U.S.C. § 851. *See United States v. Watford*, 468 F.3d 891, 910 (6th Cir. 2006) ("Under 21 U.S.C. § 851, the

Government provides notice of its intent to seek enhanced penalties, not in the indictment, but in an information filed separately by the United States Attorney with the trial court before the defendant's trial or guilty plea."), *cert. denied*, 75 U.S.L.W. 3636 (2007). We thus conclude that Snipes's second argument has no merit.

Snipes's final contention, based upon his defective-indictment theory, is that a remand for resentencing is required pursuant to 18 U.S.C. § 3553(a). Because Snipes has failed to raise a valid defective-indictment claim, however, we have no need to address this argument.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.