NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0772n.06

No. 12-6307

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 19, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| PAUL WOODS, III, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| | ) | |

**Before: MOORE, CLAY, and WHITE, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Paul Woods is serving a sentence of life imprisonment. While incarcerated, he assisted the government in its investigation and conviction of another inmate. After the government refused to file a Federal Rule of Criminal Procedure ("Rule") 35(b) motion to reduce Woods's sentence for substantial assistance, Woods filed a motion in the district court to compel the government to file such a motion. The district court denied Woods's motion to compel. For the reasons set forth, we **VACATE** the district court's denial of Woods's motion to compel and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Woods's Underlying Conviction

Woods pleaded guilty to conspiracy to distribute cocaine and conspiracy to commit money laundering pursuant to a plea agreement that he drafted. R. 799-1 (Plea Pet. and Agree.) (Page ID

#296–309).  Under the agreement, the government was to "file a motion for downward departure pursuant to U.S.S.G. § 5K1.1, or Fed. R. Crim. P. 35 . . . , provided [Woods] continues to fully and truthfully cooperate and provide substantial assistance."  *Id*. at 12 (Page ID #307).  At sentencing, the government did not file either motion, and the district court noted that it "would hold [the government's] feet to the fire and make [it] do that . . . were it not for [Woods's] perjured testimony before the grand jury and his attempted subordination [sic] of perjury in this court."  R. 799-2 (Sent'g Hr'g Tr. at 242) (Page ID #319).  On May 9, 2001, the district court sentenced Woods to a term of life of imprisonment.  *Id*. at 242–43 (Page ID #319–20); R. 799-3 (J. at 3) (Page ID #324).  Woods's "direct appeal was dismissed by this court because the plea agreement included a provision waiving his right to appeal."  *See Woods v. United States*, 398 F. App'x 117, 118 (6th Cir. 2010) (discussing the prior order of the Sixth Circuit).

**B.  28 U.S.C. § 2255 Proceedings**

Woods filed a motion under 28 U.S.C. § 2255 to set aside his convictions.  Relevant here, Woods alleged "prosecutorial misconduct . . . based upon his allegations that federal officials[] improperly influenced his decision to enter a guilty plea by allowing him to have sexual relations with his girl friend while he was in government custody."  R. 799-5 (4/18/2007 D. Ct. Op. at 1) (Page ID #348).  In short, Woods alleged that Assistant U.S. Attorney ("AUSA") Sunny Koshy and Drug Enforcement Agency ("DEA") Agent James Goodman permitted Woods to have sexual intercourse in the DEA conference room with one of his girlfriends, Tracey Buford.  Woods claimed

that this occurred multiple times during the breaks of his proffer sessions and that his attorney,

William Marlow, was present for at least one of the encounters. The district court found:

> [T]he Court first credits the testimony of . . . Koshy, that he was unaware of and did not authorize or condone any of Woods's private visits or sexual contact with Buford. Goodman actually agreed to Woods's brief visits with Buford. Although Woods and his girl friend had some sexual contact on these visits, the Court credits testimony of Marlow who was in the room at the time of most of these visits, that Woods and his girl friend did not have sexual intercourse. According to Marlow, Woods and his girl friend had only a few minutes in the small DEA conference room and sexual intercourse did not occur. There may have been some banter between Woods his girl friend and Goodman, but the Court finds that the banter of the sexual nature described by Woods and his girl friend . . . did not occur.

*Id.* at 10 (Page ID #357). The district court denied Woods relief under § 2255 because it determined that there was no "causal connection between Woods's decision to plead guilty and these visits with Buford." *Id.* at 11 (Page ID #358). We affirmed "based upon the reasoning of the district court." *Woods*, 398 F. App'x at 127.

## C. Dwaune Gravley Murder Trial

While serving his life sentence, Woods assisted the government in the investigation and ultimate conviction of another inmate, Dwaune Gravley. In his memorandum in support of his motion to compel the government to file a Rule 35(b) motion, Woods explained to the district court:

> [Gravley] killed [Shomari] Peterson as he believed Peterson had shown disrespect for one of his affiliations, a certain street gang. He affected this killing by convincing prison guards to place Mr. Peterson in his cell, along with Darryl Millburne aka "Beast" who was one of his subordinates. Once Peterson was in the cell, Gravley and Millburne savagely beat him to death . . . . Then they put a razor blade on [Peterson], so that they could subsequently claim "self-defense." Finally, and most deviously, Gravley arranged to have Millburne take the fall for the murder. Millburne pled guilty and then agreed to come back and testify on Gravley's behalf that he alone had committed the killing. Gravley was quite proud of this killing, and of his ability to

3

have inmates killed, and he bragged about the killing and his power to Paul Woods
. . . .

To Gravley's dismay, however, his prison intimidation failed to completely chill other inmates from speaking out against him. Andre Player was a witness to the murder, and proved willing to testify against Mr. Gravley. Gravley learned of this "treachery" and decided to order that Mr. Player be murdered. . . . Gravley attempted to use Mr. Woods to deliver the message to other inmates that Player should be killed. Not only did Mr. Woods refuse to participate in this murder, he revealed this plot to appropriate officials.

However, Gravley's perfidy did not end at planning Player's murder. He also devised a back-up plan: he would have the presiding judge, the lead FBI agent, and the prosecuting Assistant U.S. Attorney killed in open court (while this probably would not lead to his exoneration, he appeared to believe it was "justice" for their audacity in prosecuting him). Again, Mr. Woods morally objected to this course of action and informed appropriate officials of the plot (counsel believes this led to significantly greater courtroom security being arranged).

Mr. Woods was flown back to Kentucky to testify as a case-in-chief witness against Gravley. However, in a very odd and potentially dangerous turn of events, he was placed on the same prison transport plane with Darryl "The Beast" Millburne AND Andre Player. He was seated on the plane immediately next to Millburne. Millburne appeared to believe he had great status due to his participation in the killing of Peterson, and he bragged about this crime, and in so doing further revealed Gravley's direct participation (for instance, he revealed that Gravley stuffed a shirt down Peterson's throat, during the beating, so that the guards could not hear him beg for his life). Millburne also described how he cut his own arms with a razor to support the self-defense story. Additionally, Millburne bragged that he would kill the government's key witness, Player (who he did not realize was on the plane), and he would commit perjury at Gravley's trial, so that Gravley would escape conviction. Mr. Woods got word to the security personnel on the plane that Player was in danger, and they were able to keep him separate from Millburne.

Mr. Woods shared all of this information with FBI Agent, Patrick Schumaker and Assistant U.S. Attorney, Paul Molloy. Ultimately, Mr. Molloy called Mr. Woods as both a case-in-chief witness and a rebuttal witness against Dwaune Gravley. As a case-in-chief witness, he testified regarding Gravley's confession to ordering the killing of Peterson, and his direct participation in that brutal murder. Then, following

Millburne's flagrant perjury, he was recalled to the stand to reveal what Millburne had told him on the airplane.

R. 789 (Memo in Support of Mot. to Compel at 7–9) (Page ID #195–97).

Apparently, Woods was under the belief during the government's case-in-chief that he was ineligible for a Rule 35(b) motion because he was serving a sentence of life imprisonment. While serving as a rebuttal witness, however, Woods corrected himself during AUSA Molloy's examination:

Q. First of all, Mr. Woods, now that you have thought about it perhaps more, what do you anticipate or hope that the Government might do for you as a result of your testifying in this case?

A. Receive a Rule 35 and be placed in the witness protection program.

Q. All right. Now, with regard to the Rule 35, were you at once under the impression that because you are doing a life sentence, that you cannot receive a Rule 35?

A. Yes.

Q. Do you understand that that is not the case, that is not the way it works—

A. Yes, sir.

Q. —that you can? What do you understand the Rule 35 to be?

A. Well, the Government, they haven't made any promises. They can only recommend and file a Rule 35. And there is nothing guaranteed. It is up to my sentencing judge whether or not a Rule 35 is even granted or if I receive a time cut.

Q. I can recommend it; is that correct?

A. Yes, sir.

Q. But it is ultimately up to the judge. I think you were out of Nashville Tennessee.

A. Yes, the Middle District of Tennessee.

R. 802-1 (03/31/2011 Gravley Trial Tr. at 1687–88) (Page ID #414–15).  Gravley was convicted of murdering Shomari Peterson (among other things) and sentenced to life imprisonment.  R. 791-11 (Sealed Ex. 5) (Page ID #254–59).

## D.  Rule 35(b) Proceedings

The U.S. Attorney's Office for the Eastern District of Kentucky (presumably, AUSA Molloy) sent a letter to the U.S. Attorney's Office for the Middle District of Tennessee (where Woods was convicted) regarding Woods's cooperation in the Gravley trial.[1]  Thereafter, Woods's counsel sent a number of letters to the U.S. Attorney for the Middle District of Tennessee, Jerry Martin, requesting that his office file a Rule 35(b) motion to reduce Woods's sentence.  *See* R. 791-1 (Sealed Ex. 1) (Page ID #221–226); R. 791-4 (Sealed Ex. 2) (Page ID #230–31); R. 791-5 (Sealed Ex. 3) (Page ID #232–36).  Eventually, Woods was notified (informally) that U.S. Attorney Martin "had declined to file a Rule 35 motion," prompting Woods to file a motion to compel the government to file a Rule 35(b) motion.  R. 789 (Memo in Support of Mot. to Compel at 6) (Page ID #194); R. 788 (Mot. to Compel) (Page ID #186–88).

In his motion to compel, Woods argued that he provided "[s]ubstantial [a]ssistance in the investigation and prosecution of the brutal Shomari Peterson prison murder."  R. 789 (Memo in Support of Mot. to Compel at 7) (Page ID #195).  Woods noted that without a formal response to his counsel's letters from the government, "no rational or constitutional basis has been suggested . . .

---

[1]The letter is not in the record; thus, its details are unknown to Woods and this court.

6

to justify [the government's] decision not to file a Rule 35 motion." *Id*. at 11 (Page ID #199). Woods contended that there were two plausible reasons for the government's refusal. First, "the government wishes to punish [Woods] a second time for his failure to fully cooperate" under the terms of his original plea agreement. *Id.* at 13 (Page ID #201). Woods argued that this reason is plainly irrational because it defeats the purpose behind Rule 35(b) and therefore cannot be related to any legitimate government interest. Second, and more likely according to Woods, the government was retaliating against him for seeking relief under 28 U.S.C. § 2255. *Id* at 14 (Page ID #202). Woods asserted that this reason is unconstitutional under this court's precedents and requested that the district court "grant an evidentiary hearing where the full basis of the government's denial can be ascertained, and where the full extent of Mr. Woods' assistance can be presented." *Id*. at 18 (Page ID #206).

The government opposed Woods's motion to compel, stating that U.S. Attorney Martin had "considered the defendant's assistance, as well as the defendant's previous conduct." R. 799 (Opposition to Mot. to Compel at 1) (Page ID #284). The government was concerned, however, with "the defendant's breach of his plea agreement, failure to accept responsibility, efforts to obstruct justice, perjury and false allegations, the seriousness of the defendant's own criminal conduct, public safety factors, and lack of timely, full, and truthful cooperation."[2] *Id.* at 8 (Page ID #291). The government stated also that "[a]lthough the defendant acknowledges that he violated his plea

---

[2]The obstruction of justice and perjury rationales relate to Woods's underlying drug case where he committed perjury during grand-jury testimony and attempted to suborn perjury from two witnesses. R. 799 (Opposition to Mot. to Compel at 3) (Page ID #286).

agreement by lying in the grand jury, and apologizes for that conduct, he does not affirmatively admit

or apologize for his false allegations which he knowingly made in the §2255 proceeding." *Id*. at 5

(Page ID #288).

Woods's response to the government's opposition appears to have added an additional reason

for compelling the government to file a Rule 35(b) motion: "The United States represented that they

would recommend Rule 35 relief." R. 802 (Responsive Memo at 2) (Page ID #388). In particular,

Woods argued that it was his "understanding that the government, through [AUSA] Molloy, had

agreed to recommend and file a Rule 35" and "that the only discretionary issue would be the amount

of any Rule 35 reduction in sentence, [which] would be left up to the District Court." *Id*. at 3 (Page

ID #389). In line with this contention, Woods requested an evidentiary hearing where he believed

that "[AUSA] Molloy will testify that he assured Mr. Woods that he would recommend the filing

of a Rule 35 motion" and "[p]re-hearing discovery of internal memoranda will also shed additional

light on what exactly [AUSA] Molloy agreed to do and then recommend." *Id*.

Without holding an evidentiary hearing or permitting pre-hearing discovery, the district court

denied Woods's motion to compel, concluding:

> [T]he Government's refusal to file a substantial assistance motion is not based on an
> unconstitutional motive, and is rationally related to a legitimate Government end.
> The Government's refusal is not unwarranted given the Defendant's perjury and
> obstruction of justice, the finding that his Section 2255 testimony was lacking in
> credibility, and that he has yet to fully disclose the details of his own past criminal
> conduct.

R. 807 (D. Ct. Op. at 5) (Page ID #850). Although the district court noted that Woods had pointed

to the existence of a letter from Molloy to the U.S. Attorney for the Middle District of Tennessee,

the court did not consider Woods's argument that the government, through AUSA Molloy, had bargained away its discretion to refuse to file a Rule 35 motion. *Id.* at 2 (Page ID #847).

## II. ANALYSIS

### A. Applicable Law

We review the district court's denial of a motion to compel the government to file a Rule 35(b) motion for abuse of discretion. *United States v. Washington*, 250 F. App'x 716, 718 (6th Cir. 2007). "A district court abuses its discretion where it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *United States v. Catchings*, 708 F.3d 710, 717 (6th Cir. 2013) (internal quotation marks omitted).

Rule 35(b) permits a district court to reduce a defendant's sentence, upon motion from the government, for substantial assistance in the investigation or prosecution of another person. Relevant here, there are two scenarios where courts should not uphold the government's refusal to exercise its discretion to file a Rule 35(b) motion. First, the government's refusal to file a Rule 35(b) motion should be overturned if the government agreed to file such a motion in exchange for the defendant's cooperation. *See United States v. Benjamin*, 138 F.3d 1069, 1073–74 (6th Cir. 1998) ("[I]n order to induce a defendant to enter a plea agreement, the government may bargain away its discretion and simply promise to make the substantial assistance motion. The government then is obligated to make the motion unless the defendant breaches the agreement. The district court has the authority to determine whether a breach has occurred.") (citations omitted). Second, the government's decision not to file a Rule 35(b) motion "based on an unconstitutional motive" cannot

be upheld. *Wade v. United States*, 504 U.S. 181, 185–86 (1992). "[A] claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing. Nor would additional but generalized allegations of improper motive." *Id*. at 186. Instead, "[a] defendant has a right to a hearing only if he makes a substantial threshold showing of an unconstitutional motive." *United States v. Bagnoli*, 7 F.3d 90, 92 (6th Cir. 1993).

## B. Bargained-Away Discretion

The government notes correctly that Woods did not argue that the government bargained away its discretion to file a Rule 35 motion in his initial motion to compel at the district court. Appellee Br. at 27. Therefore, the government contends that we may treat the issue as waived. *Id*. (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 551–53 (6th Cir. 2008)). We decline to do so. Instead, we address the issue and conclude that, given the peculiarities of this case, the district court's denial of Woods's motion to compel must be vacated and the case remanded for further proceedings.

This result is appropriate here for several reasons. First, the district court did not address this argument in its opinion beyond stating that Woods "points out" the existence of the letter. R. 807 (D. Ct. Op. at 2) (Page ID #847). Thus, it appears that the district court might have improperly applied the law by failing to recognize that the government cannot refuse to file a Rule 35(b) motion if it bargained away its discretion to do so. *See Benjamin*, 138 F.3d at 1073–74. Second, although the colloquy between AUSA Molloy and Woods appears to be evidence that the government did not bargain away its discretion to file a Rule 35 motion prior to Woods's testimony, we agree with

Woods that it is ambiguous enough that it does not control the outcome of this case. Furthermore, it seems unlikely that AUSA Molloy would have made an unconditional promise to file a Rule 35 motion prior to weighing the value of Woods's testimony (which might have included waiting for the jury's verdict). Therefore, it is possible that AUSA Molloy promised to file a Rule 35 motion after Woods testified. Finally, whether the government actually bargained away its discretion is an issue of fact that can be resolved with minimal discovery and a hearing. We leave the contours of discovery and a hearing to the district court, but we note, as Woods did in his response to the government's opposition to his motion to compel, that the letter from the U.S. Attorney's Office for the Eastern District of Kentucky to the U.S. Attorney's Office for the Middle District of Tennessee and testimony from AUSA Molloy could prove controlling. For these reasons and the unique facts presented by this case, we vacate the district court's denial of Woods's motion to compel and remand for further proceedings.

## C. Substantial Threshold Showing

Woods argues that he has made a substantial threshold showing that the government's decision to not file a Rule 35(b) motion is based on an unconstitutional motive: retaliation for his seeking relief under 28 U.S.C. § 2255.[3] Therefore, according to Woods, his case must be remanded for discovery and an evidentiary hearing. Although we agree that the case must be remanded, we

---

[3]The parties do not dispute that the government's refusal to file a Rule 35(b) motion based on Woods having filed a motion under § 2255 would be an unconstitutional motive.

need not determine whether Woods has made a substantial threshold showing because the district court abused its discretion in failing to make this determination itself.

Woods requested that the district court "grant an evidentiary hearing where the full basis of the government's denial can be ascertained, and where the full extent of Mr. Woods' assistance can be presented." R. 789 (Memo in Support of Mot. to Compel at 18) (Page ID #206). Our precedents make clear that a hearing is appropriate when "[a] defendant . . . makes a substantial threshold showing of an unconstitutional motive." *Bagnoli*, 7 F.3d at 92. Rather than analyzing whether Woods made a substantial threshold showing, the district court examined the government's proffered reasons for refusing to file such a motion. *See* R. 807 (D. Ct. Op. at 4–5) (Page ID #849–850). Thus, the district court skipped an important determination: whether Woods was entitled to a hearing based on a substantial threshold showing that the government's motive was unconstitutional. Because the failure to make this determination was an abuse of the district court's discretion, we vacate the district court's denial of Woods's motion to compel and remand for further proceedings.

### III. CONCLUSION

For the reasons set forth in this opinion, we **VACATE** the district court's denial of Woods's motion to compel and **REMAND** the case for further proceedings consistent with this opinion.